STATE of Iowa, Appellee,

v.

Mark Frederick PEXA, Appellant.

No. 97–312.

Supreme Court of Iowa.

Feb. 18, 1998.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Gregory Becker, Student Legal Intern, Thomas J. Ferguson, County Attorney, and Steven Norby, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

Defendant, Mark Frederick Pexa, appeals from his conviction following trial to the court of the unauthorized possession of an offensive weapon in violation of Iowa Code section 724.3 (1995). He contends that certain items that he possessed, if assembled, did not constitute an offensive weapon under the statutory definition applied by the court in its written findings. We agree that the evidence does not support a finding that these items were an offensive weapon under the definition applied by the district court, *i.e.*, the definition contained in section 724.1(3). Because the State has at all times contended that these items were an offensive weapon under an alternative statutory definition contained in section 724.1(4), not considered by the district court in its written findings, we vacate the judgment of conviction and remand the case for further consider-

ation as to the applicability of the alternative definition.

After defendant had been contacted three times with respect to failure to display appropriate license plates on his motor vehicle, officers impounded the automobile. When the contents of the vehicle were inventoried, the officers discovered and seized two M–1000 explosive devices, a plastic tube containing ball bearings, and tape. These items were suspected to be materials for manufacture of a pipe bomb. Defendant was subsequently charged with the unauthorized possession of an offensive weapon in violation of section 724.3.

Evidence was offered that the amount of powder contained in each of the M–1000 explosive devices was 11.26 grams or approximately .394 ounces. Throughout defendant's trial and in arguments to the court prior to submission, the State contended that the items in question, if assembled, would constitute an explosive bomb, which met the definition of an offensive weapon contained in section 724.1(4). That statute defines an offensive weapon as follows:

> A bomb, grenade, or mine, whether explosive, incendiary, or poison gas; any rocket having a propellant charge of more than four ounces;

> any missile having an explosive charge of more than one-quarter ounce; or any device similar to any of these.

Defendant's primary legal argument at trial, as reflected in his motions for directed verdict, was that these unassembled parts may not constitute an offensive weapon unless designed or intended to be used for that purpose. That contention was based on the language of section 724.1(6), which defines an offensive weapon as:

> Any part or combination of parts either designed or intended to be used to convert any device into an offensive weapon as described in subsections 1 to 5 of this section or to assemble into such an offensive weapon. . . .

In its initial written findings determining defendant's guilt, the court made no finding with respect to defendant's intent to convert the individual parts into an offensive weapon. With respect to the definition of an offensive weapon, the court found that the instrumentalities seized from defendant's vehicle constituted an offensive weapon as defined in section 724.1(3). That statutory definition reads as follows:

> Any weapon other than a shotgun or muzzle-loading rifle, cannon, pistol, revolver or musket, which fires or can be made to fire a projectile by the explosion of a propellant charge, which has a barrel or tube with the bore of more than six-tenths of an inch in diameter, or the ammunition or projectile therefor. . . .

After the filing of the district court's initial written findings, the defendant moved for reconsideration. In the ruling that resulted from that motion, the district court did make a finding that the circumstantial evidence established defendant's intent to assemble the various components into an offensive weapon. Based on this finding, defendant now concedes that the requirements of section 724.1(6) have been satisfied.

■ Defendant's sole argument on this appeal is that the State's evidence established conclusively that, if the M–1000 explosive devices, plastic tube, ball bearings, and tape were assembled, they would not meet the definition of an offensive weapon contained in section 724.1(3). This argument is based on the theory that this statutory definition requires a device in which an explosive propels a projectile through a barrel or tube.

It was uncontradicted from the State's expert testimony that the plastic tube would be blown to bits on the discharge of the M–1000 explosive devices so that the ball bearings would not be fired through a barrel or tube but would simply disperse at random in all directions. Consequently, we agree with defendant that the evidence does not support the district court's findings that, if assembled, the components seized from his vehicle would be an offensive weapon under the section 724.1(3) definition. This does not mean,

however, that we should order a judgment of acquittal as defendant urges.

We have recognized that, when a crime may be committed in different ways and the State specifies one way, the offense must be proved to have been committed in the way charged. *State v. Willet,* 305 N.W.2d 454, 457 (Iowa 1981); *State v. Hochmuth,* 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964). In the present case, however, the trial information simply charged a violation of section 724.3 in general terms without identifying a particular definition of "offensive weapon." In that situation, the State may prevail by showing that the evidence is sufficient under any available theory. *Hochmuth,* 256 Iowa at 445, 127 N.W.2d at 659.

The State has at all times maintained that the instrumentalities defendant possessed constituted an offensive weapon under the definition contained in section 724.1(4). The court made no findings as to that contention. A failure to consider an alternative definition of the offense charged does not constitute an acquittal of that offense for double jeopardy purposes. *United States v. Follette,* 462 F.2d 1041, 1046 (2d Cir.1972); *People v. Jackson,* 20 N.Y.2d 440, 285 N.Y.S.2d 8, 18, 231 N.E.2d 722, 730 (1967). The district court's misapplication of section 724.1(3) only entitles the defendant to avoid the finding of guilt based on that definition. Because we are convinced that an issue of fact remains concerning defendant's guilt under the section 724.1(4) definition, we vacate the judgment and remand the case for further proceedings on the existing record so that the court can consider and rule on that issue. *See Huyser v. District Ct.,* 499 N.W.2d 1, 3 (Iowa 1993) (failure to make outcome determinative finding only entitles alleged contemner to vacation of finding of contempt and remand for further proceedings). Vacation of the judgment and remand to the district court for further proceedings does not place defendant in jeopardy for a second time. The district court's original decision, our decision on appeal, and the district court's decision on remand is a continuous judicial examination of defendant's guilt in the same proceeding.

JUDGMENT VACATED AND REMANDED.