[No. 22572-7-II.   Division Two.   December 22, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. RYAN LLOYD HESCOCK, *Appellant*.

*Kitteridge Oldham,* for appellant (appointed counsel for appeal).

*Christopher O. Shea, Prosecuting Attorney,* and *Cynthia Cecilia Szeker, Deputy,* for respondent.

ARMSTRONG, A.C.J. — Ryan Hescock was charged in juvenile court with one count of forgery. Although the State charged Hescock with two alternative means of committing forgery in violation of RCW 9A.60.020(1)(a) and RCW 9A.60.020(1)(b), the trial court found Hescock guilty of violating only RCW 9A.60.020(1)(a). On appeal, Hescock argues that the evidence is insufficient to support his conviction under alternative (1)(a) and that double jeopardy prevents a remand for the trial court to consider whether he is guilty under alternative (1)(b). We agree and accordingly reverse and dismiss Hescock's adjudication of guilt.

## FACTS

Ryan Hescock cashed a payroll check payable to Michael Gooch at U.S. Bank in Sequim on May 8, 1997. Gooch's name was written on the back of the check, and underneath was written "Pay to the order of: Ryan Hescock," followed by Hescock's signature. Gooch did not endorse the check and did not authorize Hescock, a stranger, to cash it.

Hescock told the police that on May 8, he was standing near a bus stop in Sequim when a stranger approached and asked if he had identification and a bank account. The man offered Hescock $5.00 to cash a check at Hescock's bank. Hescock took the check and walked a few blocks to U.S. Bank, where he had an account. He wrote his name on the back of the check, cashed it and took the cash back to the man. Hescock said that Gooch's name was on the back of the check when he got it from the stranger. The police officer did not recall asking Hescock who wrote "Pay to the order of: Ryan Hescock."

Hescock was charged with one count of forgery by means of falsely making, completing or altering a written instrument in violation of RCW 9A.60.020(1)(a), or in the alternative, by possessing or putting off as true a written instrument he knew to be forged in violation of RCW 9A.60-.020(1)(b).

In its oral ruling, the court concluded that Hescock was guilty of both means of forgery. In its written ruling, however, the court found that Hescock was guilty of forgery only under (1)(a), i.e., he falsely made, completed or altered a written instrument.

## ANALYSIS

■ Hescock first contends that the evidence is insufficient to convict him of RCW 9A.60.020(1)(a) because the testimony showed only that he signed his own name to the back of the check. The State conceded at oral argument and we agree that the evidence does not support a conviction under 9A.60.020(1)(a).[1] But the State urges us to remand for the trial court to determine whether Hescock violated 9A.60.020(1)(b). Hescock counters that a remand would violate double jeopardy.

■ The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]"[2] U.S. CONST. amend. V. The Double Jeopardy Clause protects against three distinct abuses by government: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for

[1]The evidence is insufficient because signing his own name to the back of the check does not meet any of the definitions in alternative (1)(a). *See* RCW 9A.60.010(4) ("falsely make"); RCW 9A.60.010(5) ("falsely complete"); RCW 9A.60.010(6) ("falsely alter").

[2]The Double Jeopardy Clause applies to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), and is coextensive with article I, section 9 of the State Constitution. *State v. Gocken*, 127 Wn.2d 95, 97, 896 P.2d 1267 (1995).

the same offense.[3] *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306-07, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984). "The primary goal of barring reprosecution after acquittal is to prevent the State from mounting successive prosecutions and thereby wearing down the defendant." *Lydon*, 466 U.S. at 307. The Supreme Court explained the rationale in *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199, 61 A.L.R.2D 1119 (1957):

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green*, 355 U.S. at 187-88.

But the prohibition against successive trials is not absolute. *Lydon*, 466 U.S. at 308. If a defendant appeals his conviction and is granted a new trial, retrial for the same offense is generally not barred. *Id.* (citing *Ball v. United States*, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896)). In allowing retrial after conviction and a successful appeal, the Supreme Court has adopted the concept of continuing jeopardy. *Price v. Georgia*, 398 U.S. 323, 329, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970)). Under this concept, the initial jeopardy does not automatically terminate following conviction; instead, the criminal proceeding continues to "run its full course." *See id.* at 326 (citing *Green*, 355 U.S. at 189); *Lydon*, 466 U.S. at 308. The "[i]nterests supporting the continuing jeopardy principle involve fairness to society, lack of finality, and limited waiver." *Id.* (citing *Price*, 398 U.S. at 329 n.4).

▮ In contrast, an acquittal terminates the initial jeop-

---

[3]Double jeopardy applies to juvenile proceedings and attaches when the trier of fact begins to hear evidence. *Breed v. Jones*, 421 U.S. 519, 531, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975).

ardy, thereby preventing a second trial. *Lydon*, 466 U.S. at 308. "This is so whether [acquittals] are 'express or implied by a conviction on a lesser included offense.'" *Id.* at 308 (quoting *Price*, 398 U.S. at 329). Similarly, if an appellate court has held that evidence is insufficient to support the conviction, then retrial for that offense is prohibited. *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). The unreversed finding of insufficient evidence by an appellate court is the equivalent of an acquittal. *Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984).

Because we have held the evidence insufficient to support the forgery conviction under (1)(a), Hescock clearly cannot be retried on that alternative. But the State argues that the evidence is sufficient to convict him under RCW 9A.60.020(1)(b). And although the trial court did not enter written findings and conclusions with respect to alternative (1)(b), the State asks us to look to the trial court's oral ruling.

Under alternative 1(a), a person is guilty of forgery if, with intent to injure or defraud, he "falsely makes, completes, or alters a written instrument." RCW 9A.60-.020(1)(a). Alternative 1(b) provides that a person is guilty of forgery if, with intent to injure or defraud, he "possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged." RCW 9A.60-.020(1)(b). In its initial oral ruling, the trial court discussed both means of committing forgery and concluded that Hescock was guilty under either alternative. Yet in its written findings of fact and conclusions of law, the court found Hescock guilty only under RCW 9A.60.020(1)(a), i.e., he did falsely make, complete or alter a written instrument.

A court's oral opinion is not a finding of fact. *State v. Reynolds*, 80 Wn. App. 851, 860 n.7, 912 P.2d 494 (1996) (citing *State v. Williamson*, 72 Wn. App. 619, 623, 866 P.2d 41 (1994)). Rather, the court's oral opinion is "no more than a verbal expression of [its] informal opinion at that

time . . . necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned." *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963). And the trial court's oral decision is not binding "unless it is formally incorporated into findings of fact, conclusions of law, and judgment." *State v. Dailey*, 93 Wn.2d 454, 459, 610 P.2d 357 (1980) (citations omitted).

■ Nevertheless, a reviewing court may look to the trial court's oral ruling to interpret written findings and conclusions. *State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994) (trial court's comprehensive oral ruling used to determine that State proved essential elements); *State v. Moon*, 48 Wn. App. 647, 653, 739 P.2d 1157 (1987). But here, the trial court's written findings and conclusions are unambiguous; the court did not find Hescock guilty under (1)(b). Accordingly, it is unnecessary to look to the oral ruling to *interpret* the written conclusions.[4]

Yet Washington courts have allowed remand following an adjudication of guilt when the findings and conclusions are incomplete. *See State v. Head*, 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998) (remand appropriate following trial court's failure to enter written findings and conclusions); *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995) (case remanded where evidence supported conviction but trial court failed to enter findings on ultimate facts); *State v. Souza*, 60 Wn. App. 534, 805 P.2d 237 (1991) (remand proper remedy where trial court failed to address element

---

[4]Justice Alexander's dissent in *State v. Alvarez*, 128 Wn.2d 1, 904 P.2d 754 (1995), is especially illustrative in the instant case:

> But how is the appellate court to know when a failure to find is an oversight, and when it accurately represents the judge's view of the evidence at the time of decision? The entry of findings and conclusions is a considered and formal judicial act vastly different from the informal oral opinion judges give at the end of a case. The prosecutor, who normally prepares the findings, has time to do a thoughtful job, and the court has time to consider whether these are the findings it indeed wishes to make. Under such circumstances, it is inappropriate for the appellate court to assume that some mere "trial error" has occurred. . . .

*Alvarez*, 128 Wn.2d at 24 (Alexander, J., dissenting) (quoting *State v. Souza*, 60 Wn. App. 534, 546, 805 P.2d 237 (1991) (Forrest, J., dissenting)).

of intent). Remand in these circumstances does not violate double jeopardy principles because the defect is not based on the prosecution's failure to prove its case; the defendant was not acquitted because of insufficient evidence; and no additional evidence is required or allowed on remand. *Souza*, 60 Wn. App. at 541; *see Alvarez*, 128 Wn.2d at 19-21; *see also Head*, 136 Wn.2d at 625. Thus, in *Alvarez*, remand did not violate double jeopardy because it was clear that the defendant had been convicted. The court's findings and conclusions "unequivocally state that "[t]he offense of Harassment has been proven beyond a reasonable doubt.' " *Alvarez*, 128 Wn.2d at 20 (alteration in original). Similarly, in *Souza*, the trial court's failure to enter a finding of criminal intent, unless considered an inadvertent error, would be "utterly inconsistent" with the court's findings and conclusion that Souza was guilty of theft. *Souza*, 60 Wn. App. at 540.

Here, unlike *Alvarez* and *Souza*, there are no written findings or conclusions on alternative (1)(b) that would demonstrate that the trial court was convinced of Hescock's guilt. Although the trial court stated that Hescock was guilty of forgery beyond a reasonable doubt, it referred only to the elements of alternative (1)(a). The question then is whether the trial court's failure to enter findings and conclusions as to alternative (1)(b) bars, under double jeopardy principles, a remand for further prosecution under (1)(b). This precise issue has not been addressed in Washington or by any authority that is binding on Washington courts.

In *State v. Davis*, 190 Wash. 164, 166-67, 67 P.2d 894 (1937), the State Supreme Court held that the jury's silence as to multiple counts of the indictment barred retrial on those counts. Davis was charged with vehicular homicide, driving while intoxicated, and reckless driving. The jury acquitted him of vehicular homicide, but did not return a verdict on the other two counts. *Id.* at 164-65. The court said:

It is a general rule, supported by the great weight of authority,

that, where an indictment or information contains two or more counts and the jury either convicts or acquits upon one and is silent as to the other, and the record does not show the reason for the discharge of the jury, the accused cannot again be put upon trial as to those counts.

*Davis*, 190 Wash. at 166.

The United States Supreme Court has also considered jury silence tantamount to an acquittal for double jeopardy purposes. For example, in *Green*, 355 U.S. at 189-90, the jury found the defendant guilty of second degree murder, rather than first degree murder. After the verdict was set aside on appeal, Green was again tried for first degree murder, even though the original jury had refused to find him guilty of that charge. The Supreme Court concluded that the second trial for first degree murder placed Green in jeopardy twice for the same offense. *Id.* at 190. The Court gave two reasons for its conclusion. First, the jury's guilty verdict for second degree murder was an implicit acquittal on the charge of first degree murder. *Id.* Second, even if the verdict is not considered an implicit acquittal, when the jury was discharged after a "full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so[,]" Green's jeopardy for first degree murder ended.[5] *Id.* at 191.

Similarly, in *Price*, 398 U.S. at 324, the jury returned a verdict of guilty to the lesser-included crime of voluntary manslaughter, but made no reference to the charge of murder. After the conviction was reversed, the defendant was again tried for murder. Relying on *Green*, the Supreme Court held that the second trial violated the Double Jeopardy Clause: "[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full

---

[5]The State Supreme Court followed *Green* in *State v. Schoel*, 54 Wn.2d 388, 341 P.2d 481 (1959) (overruling *State v. Ash*, 68 Wash. 194, 122 P. 995 (1912)).

opportunity to return a verdict on the greater charge."
*Price,* 398 U.S. at 329 (footnote omitted).

Although *Davis, Green,* and *Price* are helpful, they do
not answer the issue in this case: whether silence as to one
alternative means constitutes an implicit acquittal. At least
three courts have held that such silence is not an implicit
acquittal. *Beebe v. Nelson,* 37 F. Supp. 2d 1304 (D. Kan.
1999); *State v. Pexa,* 574 N.W.2d 344 (Iowa 1998); *United
States ex rel. Jackson v. Follette;* 462 F.2d 1041 (2d Cir.
1972); *cf. United States v. Garcia,* 938 F.2d 12, 14-15 (2d
Cir. 1991) (ambiguous verdict does not constitute implicit
acquittal). In *Beebe,* the court simply concluded, with little
analysis, that silence as to an alternative means is not an
implicit acquittal and that the analysis in *Green* is limited
to factual situations involving a lesser-included offense. *See
Beebe,* 37 F. Supp.2d at 1308. In *Pexa,* the Iowa Supreme
Court similarly concluded that "failure to consider an
alternative definition of the offense charged does not con-
stitute an acquittal of that offense . . . ." *Pexa,* 574 N.W.2d
at 347 (citing *Follette,* 462 F.2d at 1042; *People v. Jackson,*
20 N.Y.2d 440, 231 N.E.2d 722, 285 N.Y.S.2d 8, 18 (1967)).

In *Follette,* the defendant was charged with felony mur-
der and premeditated murder. The jury was told to return
a verdict on one count and remain silent as to the other.
The jury returned a verdict of premeditated murder. The de-
fendant appealed his conviction and obtained reversal based
on trial error. Upon retrial, the defendant argued that
retrial on the charge of felony murder violated double jeop-
ardy. *Follette,* 462 F.2d at 1043-44. After lengthy analysis of
Supreme Court cases including *Green* and *Price* and the
historical origins of felony and premeditated murder, the
Second Circuit concluded that the case was "not controlled
by any Supreme Court case on its facts, and [was] not
capable of simple resolution either on an historical or logi-
cal basis." *Follette,* 462 F.2d at 1049 (footnotes omitted).

The court then balanced the "fairness to society in
obtaining a verdict on a proper indictment and the avoid-
ance of undue vexation to the defendant by a retrial on

both original charges . . . ." *Follette*, 462 F.2d at 1049. The court concluded that society's interest in obtaining a verdict outweighed the defendant's interests because (1) there was no conviction of a lesser-included offense; (2) no mistrial declared without the defendant's consent; and (3) the reversal was based on the improper admission of evidence. *Id.* at 1050. The court found little or no prejudice to the defendant because he was already subject to a new trial on the charge of premeditated murder and the same evidence was admissible to prove both offenses. *Id.* And retrial on the felony murder count did not subject him to greater penalty or stigma as would retrial on the greater offense after conviction of a lesser-included offense. *Id.*

In *Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997), the Sixth Circuit refused to follow *Follette*. In *Terry*, the defendant shot his brother-in-law in the back of the head at close range and claimed self-defense. He was charged with two alternative forms of capital murder, wanton murder and intentional murder. The jury convicted Terry of wanton murder and left the verdict form for intentional murder blank. The conviction was reversed because the evidence did not support a conviction for wanton murder. *Id.* at 455-56. Relying on *Green* and *Price*, the Sixth Circuit held that Terry could not be retried for intentional murder because (1) the jury had "ample opportunity to convict" on the charge but failed to do so, and (2) the verdict on intentional murder could be viewed as an implicit acquittal. *Id.* at 458. The court rejected a narrow reading of *Green* that would limit its double jeopardy analysis to a conviction of a lesser included offense: "*Green* noted that it is 'immaterial' whether the charge that originally resulted in a guilty verdict is a lesser-included offense of the charge that is retried."[6] *Id.* (citing *Green*, 355 U.S. at 194 n.14). The court concluded that "although jeopardy on the wanton murder

---

[6]*Green* went on to state, "The vital thing is that it is a distinct and different offense." *Green*, 355 U.S. at 194 n.14. But we agree with *Terry* that when a crime is charged under "two separate statutory subsections of a unitary offense," the result is the same because "continuing jeopardy as to one may not be bootstrapped onto the other." *Terry*, 111 F.3d at 459.

charge may have continued after the trial and successful appeal, we hold that jeopardy on the intentional murder charge ended with the trial." *Id.*

■ We agree with the rationale in *Terry.* A broader reading of *Green* is consistent with our Supreme Court's decision in *Davis* that jury silence as to multiple counts bars further prosecution on those counts. *See Davis,* 190 Wash. at 166. Furthermore, the trier of fact here, as in *Terry,* had full opportunity to convict of alternative (1)(b) but failed to do so. And no extraordinary circumstances prevented the court from doing so. *Green,* 355 U.S. at 191.

But even if we apply the *Follette* balancing test, our analysis would not change. The *Follette* court emphasized that the defendant was not prejudiced by retrial on both alternatives because he was already subject to retrial on the charge of premeditated murder. There, the reversal was based on trial error. Hescock's appeal is based on insufficient evidence. When a conviction is reversed due to trial error, generally, the defendant may be retried for the same offense. *Lydon,* 466 U.S. at 308. But when a conviction is reversed based on insufficient evidence, retrial is barred. *Burks,* 437 U.S. at 18. If we remand for entry of findings and conclusions based on alternative (1)(b), Hescock is penalized for appealing his conviction based on insufficient evidence of alternative (1)(a). This essentially "[c]ondition[s] an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense . . . ." *Green,* 355 U.S. at 193-94. This dilemma "exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." *Green,* 355 U.S. at 194. We, therefore, reverse and dismiss Hescock's adjudication of guilt.

SEINFELD and HOUGHTON, JJ., concur.