FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8: 49

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

ANDY & SUE WHITWORTH, Husband and Wife; DOUG & STACY YEAMAN, Husband and Wife; ROBERT & PHYLLIS NELSON, Husband and Wife; BRENT & CONNIE DAVIS, Husband and Wife; NICK & JOANNE SPRINGER, Husband and Wife; KARL & MARSHA MICHELS, Husband and Wife; DOUG & YOLANDA RAUCH, Husband and Wife; HOWARD & STACEY ALLINGTON, Husband and Wife; MARVIN & HELEN TAYLOR, Husband and Wife; RANDY & JODI SPARKS, Husband and Wife; MORALL & WENDI OLSON, Husband and Wife; DAVE & CRISTA NEAL, Husband and Wife; FELIX & JOLENE HARO, Husband and Wife; JEFF & AMY HULSE, Husband and Wife; BRENDAN & ANGIE HEATH, Husband and Wife; GILBERT & CAROLEE ORNELAS, Husband and Wife; and CAROLEE ORNELAS as Trustee of the CINDY MORSE LIVING TRUST,

Respondents.

v.

DAVE'S VIEW, LLC, a Washington limited liability company; DAVE'S VIEW AT MARTIN'S BLUFF HOMEOWNERS' ASSOCIATION, a Washington non-profit corporation, LYNDA S. WILSON, an individual; and CHAD WILSON, a married man,

Appellants.

No. 42687-1-II

UNPUBLISHED OPINION

MAXA, J. – Dave's View LLC, Dave's View at Martin's Bluff Homeowners' Association, Lynda Wilson and Chad Wilson, the developers of a five-phase housing development, appeal the trial court's bench trial rulings that (1) the "Development Period" ended and Dave's View was obligated to turn over control of the homeowners' association to lot owners in Phase 1 once

Dave's View had sold all but two lots in that phase, (2) the homeowners' association had authority to collect assessments for and a duty to maintain only those common areas associated with Phase 1 of the development, and (3) neither the declaration of covenants, conditions and restrictions (CC&Rs) nor the law authorized the imposition of liens against the lot owners' properties for failure to pay past due assessments. We affirm.

## FACTS

*Establishment of Dave's View at Martin's Bluff*

Dave's View LLC, was the developer of a 400-acre tract of land in Kalama known as Dave's View at Martin's Bluff. Chad Wilson and his mother Lynda Wilson[1] held all of the controlling interest in and were the managing members of Dave's View LLC. In 2003, Lynda filed articles of incorporation for a homeowners' association for Phase 1 of Dave's View at Martin's Bluff. The homeowners' association's board of directors consisted of Lynda, Chad, and Chad's wife, Michelle Wilson.

On April 20, 2004, Dave's View recorded a plat for the development, which provided for 118 lots to be developed in five phases. Dave's View also filed CC&Rs that provided that Dave's View was the declarant and owner of a subdivision known as "Dave's View at Martin's Bluff, Phase 1" according to a recorded plat. Clerk's Papers (CP) at 22. The CC&Rs defined the lots in Phase 1 as the "Property" and defined "plat" as the recorded plat for Phase 1. CP at 22, 24. The CC&Rs further provided that "Phases 2, 3, 4 and/or 5 may be added to the Property by Declarant at some future date." CP at 22.

---

[1] Because this case involves multiple family members who share the same last name, we refer to the parties by their first names for clarity. We intend no disrespect.

The CC&Rs designated a "Development Period", defined as "that period of time that the Declarant holds title to at least two (2) Lots in Phase 1, 2, 3, 4 or 5 for purposes of development, sale or resale." CP at 24. The CC&Rs defined "Lots" as "35 individual tracts of real property comprising Phase 1 of Dave's View at Martin's Bluff (along with subsequent additional lots which may be added to the Property by Declarant) as divided by deed from the Declarant." CP at 24. The CC&Rs allowed Dave's View to modify the CC&Rs at any time before the end of the Development Period.

Section 26 of the CC&Rs provided for a homeowners' association for Dave's View at Martin's Bluff:

> In order to enforce the provisions of this Declaration, there shall be formed the Association which shall be organized in a democratic manner and become effective at a meeting of the Designated Owners of the Lots within twenty-four (24) months after the date of recordation of the plat of Dave's View at Martin's Bluff or after Declarant has sold all but two (2) Lots, whichever is later. The Declarant shall arrange for the calling of the first meeting of the Association. The Association shall elect such officers and establish such bylaws, rules and regulations for the operation of the Association and enforcement of this Declaration that are reasonably required.

CP at 31. The homeowners' association, formed in 2003, charged and collected dues and special assessments from the Phase 1 lot owners.

In January 2006, Dave's View filed new CC&Rs for Phase 2 of Dave's View at Martin's Bluff. However, Dave's View did not take any affirmative action to add the Phase 2 properties to Dave's View at Martin's Bluff, Phase 1, as the Phase 1 CC&Rs allowed.[2]

---

[2] In February 2009, Dave's View also filed an amended declaration of CC&Rs that purported to replace those filed in 2004 for Phase 1 and in 2006 for Phase 2, and that added a Phase 3. The new declaration of CC&Rs stated that it applied to all lot owners within Dave's View at Martin's Bluff. However, the trial court ruled on summary judgment that this amended declaration was unenforceable as against the Phase 1 lots, and Dave's View does not assign error to this ruling.

By January 31, 2006, Dave's View had sold all but two lots in Phase 1. However, Dave's View did not turn over control of the homeowners' association to the Phase 1 lot owners at that time.

*Phase 1 Lot Owners' Lawsuit and Trial*

In 2008, 17 Phase 1 lot owners filed a complaint against Dave's View, LLC, Dave's View at Martin's Bluff Homeowners' Association, Lynda Wilson, and Chad Wilson. The lot owners claimed that the Wilsons in their capacity as the homeowners' association's board of directors violated chapter 64.38 RCW and the CC&Rs because they failed to call homeowners' meetings to present or ratify budgets, failed to hold annual meetings, failed to make meetings of the board of directors subject to observation and participation by the homeowners, failed to make all homeowners' association records available upon demand, and improperly collected dues and special assessment fees that were not approved by a properly elected board of directors or substantiated by a budget ratified by the members. The lot owners requested that the trial court order the defendants to hold the first annual meeting of the homeowners' association and to produce for inspection all homeowners' association records. Finally, the lot owners requested a judgment for unauthorized assessments and for attorney fees.

The lot owners moved for partial summary judgment. In December 2010, the trial court entered a declaratory judgment holding in relevant part: (1) the original declaration of CC&Rs was the only instrument controlling Phase 1 and could not be changed unilaterally, (2) the provision allowing Dave's View to modify the CC&Rs during the Development Period was illusory and unenforceable as against the Phase 1 lots, (3) Phase 1 assessments were for the purpose of Phase 1 maintenance and repair costs, (4) road and/or drainage maintenance/repair costs must be assessed to Phase 1 lots at the rate of 1/118 per lot, and (5) under section 26 of the

4

CC&Rs the development period ended and the lot owners had the right to form a homeowners' association as of January 31, 2006, the date that all but two lots in Phase 1 were sold.

The case proceeded to a bench trial on the remaining issues. After trial, the trial court entered findings of fact, including the following:

(1) the Development Period ended upon the sale of all but two of the lots in Phase 1, which occurred on January 31, 2006 (finding of fact 3);

(2) Dave's View reserved the right to add property to the homeowners' association but did not do so (finding of fact 4);

(3) the CC&Rs did not provide for an extension of the "Development Period" for Phase 1 (finding of fact 5);

(4) the homeowners' association existed to collect assessments and maintain the common areas shown on the Phase 1 plat (finding of fact 6);

(5) the homeowners' association had a duty to maintain common areas delineated on the Phase 1 plat and the main private road shared by Phases 1, 2 and 3 (finding of fact 7);

(6) Dave's View should have transferred control over the homeowners' association to the lot owners as of January 31, 2006 (finding of fact 8);

(7) proper rules for enforcement and appeal were required in order to record liens against lot owner titles (finding of fact 22); and

(8) there was no authority to record notices of past due assessments against lot owners, which were treated like liens against their property (finding of fact 31).

Consistent with these findings, the trial court ordered Dave's View to call a meeting to elect a board of directors for the homeowners' association and to turn over to the elected board all the association's records, accounts, and funds collected from Phase 1 lot owners after January

31, 2006. The trial court also ordered Dave's View to pay damages to two lot owners against whose property Dave's View filed liens and to sign a release clearing the titles to those properties and to clear the titles to the properties against which Dave's View filed notices of past due assessments. The trial court reconsidered and affirmed its declaratory judgment entered on summary judgment in December 2010.

Dave's View appeals the trial court's ruling that the development period ended once all but two Phase 1 lots were sold and assigns error to findings of fact 3 through 8, 22 and 31. Dave's View does not appeal the trial court's partial summary judgment order.

## ANALYSIS

Dave's View's primary argument is that that the trial court erred in ruling that the Development Period ended on January 31, 2006, and that control of the homeowners' association should have been turned over to the Phase 1 lot owners as of that date, as set forth in findings of fact 3 and 8.[3] Dave's View also argues that the trial court erred in making the following findings: (1) Dave's View failed to add property to the Phase 1 development (finding of fact 4), (2) the CC&Rs did not provide for any extension of the development period (finding of fact 5), (3) the homeowners' association had authority to collect assessments for and a duty to maintain only those common areas associated with Phase 1 (findings of fact 6 and 7), (4) there could be no recordings against lot owner titles without proper rules for enforcement and appeal (finding of

---

[3] In addition to assigning error to the findings, Dave's View submits the following assignment of error, "Trial court terminated the Development 'Control' Period without legal authority." Br. of Appellant at 1. Because we hold that findings of fact 3 and 8 should be treated as conclusions of law, this assignment duplicates the assignment of error to these findings.

fact 22), and (5) neither the CC&Rs nor the law authorized the imposition of liens against the lot owners' property for failure to pay past due assessments (finding of fact 31).[4]

We hold that the trial court did not err in entering these findings of fact and intertwined conclusions of law.

A.  STANDARD OF REVIEW

We review a trial court's decision following a bench trial by asking whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012). Unchallenged findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Some of the trial court's rulings labeled as "findings of fact" to which Dave's View assigns error actually are conclusions of law (sometimes mixed with factual findings) because they required the trial court to analyze the CC&Rs to determine their legal effect. We review conclusions of law de novo, even if they are mislabeled as findings of fact. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 556, 132 P.3d 789 (2006), *aff'd*, 162 Wn.2d 340, 172 P.3d 688 (2007).

B.  DURATION OF DEVELOPMENT PERIOD/CONTROL OVER ASSOCIATION

Dave's View interprets the CC&Rs as allowing it to maintain control over the homeowners' association until all but two lots in all five phases of the development were sold. Therefore, Dave's View argues that the trial court erred when it concluded that the Development Period ended on the date that all but two lots in Phase 1 were sold (finding of fact 3) and that

---

[4] Dave's View also raises several arguments regarding the trial court's summary judgment order and additional bench trial findings. However, because it does not assign error to the order and these findings, we need not consider these arguments. RAP 10.3(a)(4).

Dave's View was obligated to turn over control of the homeowners' association to the Phase 1 lot owners as of that date (finding of fact 8). Although these rulings were designated as a findings of fact, because they involve interpretation of the homeowners' association's governing documents, they include conclusions of law that we review de novo. We hold that the trial court did not err in entering these findings and conclusions.

1. Principles of Interpretation for CC&Rs

Chapter 64.38 RCW governs homeowners' associations in Washington. There is no statute in chapter 64.38 RCW setting limitations on the period during which a developer may have control over a development's homeowners' association. Accordingly, we look to the development's governing documents to determine the duration of Dave's View's control over the homeowners' association. Here, the CC&Rs control the resolution of this issue.

We apply principles of contract interpretation to interpret provisions in CC&Rs and other governing documents relating to real estate developments. *See, e.g., Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 273-75, 279 P.3d 943 (2012) (interpreting homeowners' association articles of incorporation, bylaws and covenants); *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011) (interpreting restrictive covenant). Contract interpretation is a question of law that we review de novo. *Dave Johnson Ins. Inc. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012).

The purpose of contract interpretation is to determine the parties' intent. *Roats*, 169 Wn. App. at 274. To assist in determining intent, we may apply the "context rule" adopted in *Berg v. Hudesman*, 115 Wn.2d 657, 666-69, 801 P.2d 222 (1990). The context rule applies even when the provision at issue is unambiguous. *Roats*, 169 Wn. App. at 274. This rule " 'allows a court, while viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances

8

leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.' " *Roats*, 169 Wn. App. at 274 (quoting *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.*, 76 Wn. App. 267, 275, 883 P.2d 1387 (1994)).

Contractual language generally must be given its ordinary, usual and popular meaning. *Jensen*, 165 Wn. App. at 105. "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective." *Snohomish County Pub. Transp. Benefit Area Corp. v. First Grp. Am., Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012). And " '[w]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.' " *Better Fin. Solutions, Inc. v. Transtech Elec., Inc.*, 112 Wn. App. 697, 712 n.40, 51 P.3d 108 (2002) (quoting *Byrne v. Ackerlund*, 108 Wn.2d 445, 453–54, 739 P.2d 1138 (1987)).

When interpreting the extent and scope of a homeowners' association's authority, we may consider not only the CC&Rs but also all of the corporation's governing documents, including deeds, articles of incorporation, and bylaws. *Roats*, 169 Wn. App. at 274. These are considered " 'correlated documents' " and must be construed together as a whole. *Roats*, 169 Wn. App. at 274 (quoting *Rodruck v. Sand Point Maint. Comm'n*, 48 Wn.2d 565, 577, 295 P.2d 714 (1956)).

If after considering extrinsic evidence a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations, the provision is ambiguous and we construe that ambiguity against the document's drafter. *Riss v. Angel*, 80 Wn. App. 553, 557, 912 P.2d 1028 (1996), *aff'd*, 131 Wn.2d 612, 934 P.2d 669 (1997); *Jensen*, 165 Wn. App. at 105.

2. Finding of Fact 3

Dave's View assigns error to finding of fact 3 and argues that the trial court erroneously concluded that the "Development 'Control' Period" ended after Dave's View sold all but two lots in Phase 1. Br. of Appellant at 1. This finding provided, "The Development Period ended twenty-four months from the date the Plat for Phase 1 was recorded or upon the sale of thirty-three of the thirty-five lots in Phase 1, which was [January 31, 2006]." CP at 370. We hold that while the CC&Rs certainly are not a model of clarity, the most reasonable interpretation of the definition of Development Period supports this finding/conclusion.

a. Definition of "Development Period" in CC&Rs

Section 1(j) of the CC&Rs defines "Development Period" as "that period of time that the Declarant holds title to at least two (2) Lots in Phase 1, 2, 3, 4 or 5 for purposes of development, sale or resale." CP at 24. But section 1(k) of the CC&Rs defines "Lots" as "35 individual tracts of real property comprising *Phase 1* of Dave's View at Martin's Bluff (along with subsequent additional lots which may be added to the Property by Declarant) as divided by deed from the Declarant." CP at 24 (emphasis added). Reading the definition of "Development Period" together with the definition of "Lots" results in a nonsensical provision: the period is "that period of time that the Declarant holds title to at least two (2) [of the 35 tracts of property comprising Phase 1] in Phase 1, 2, 3, 4 or 5." CP at 24. In light of the definition of "Lots", the definition of "Development Period" is incomprehensible. It is not possible to hold title to property in Phase 1 that is also property in Phases 2, 3, 4 or 5. These two definitions create an inherent ambiguity.

However, the scope of the CC&Rs helps explain these confusing provisions. The CC&Rs only apply to *Phase 1* of Dave's View at Martin's Bluff (referred to as the "Property"). CP 22. Recital A of the CC&Rs states that Phases 2, 3, 4 and/or 5 "may" be added to the

10

property by the developer. CP at 22. This language suggests that the Development Period continues while the "Declarant holds title to at least two (2) Lots in Phase 1, 2, 3, 4 or 5" only if Phases 2 through 5 have been added to the Property. CP at 24. The trial court found in finding of fact 4 that Dave's View did *not* add any other phases to the Property.[5] As a result, we read the CC&Rs as providing that the Development Period ended once Dave's View no longer owned at least two lots in Phase 1.

Dave's View disputes this analysis, asserting in oral argument that Phases 2 through 5 *automatically* were added to the property subject to the CC&Rs. But this argument is inconsistent with the plain language of the CC&Rs. Recital A states that "Phases 2, 3, 4 and/or 5 *may* be added to the Property *by Declarant* at some future date." CP at 22 (emphasis added). This provision indicates that whether to add other phases to the property was left to Dave's View's discretion and required some affirmative action by Dave's View.

   b. Definition of "Development Period" in Association Bylaws

We may consider all of a development's governing documents in interpreting the CC&Rs. *Roats*, 169 Wn. App. at 274. Dave's View adopted homeowners' association bylaws that defined "Development Period." However, we do not find the bylaws helpful in interpreting that term.

The homeowners' association bylaws contained two different definitions of Development Period. Article 1.5 provided a definition identical to section 1(j) of the CC&Rs. Article 3.3 stated a more specific definition: "The Dave's View development period shall mean twenty [-]

---

[5] As we discuss below, Dave's View assigned error to this finding but did not support the assignment with argument. Accordingly, it becomes a verity on appeal. *In re Disciplinary Proceeding against Whitney*, 155 Wn.2d 451, 466-67, 120 P.3d 550 (2005). In any event, the evidence supports the finding.

11

four (24) months from the date of recording the initial Declaration or until the date that all but two (2) of the proposed lots within the Dave's View plat (all phases) have been sold, which ever [sic] is later." CP at 193. This second definition refers to "lots" generically rather than to the defined term "Lots" and therefore avoids the structural inconsistency of the CC&R definition. However, the bylaw definitions do not help resolve the question of whether Phases 2 through 5 must be added to the property governed by the CC&Rs in order to factor into the definition of Development Period.

     c.    Section 26 of the CC&Rs

Instead of directly addressing the confusing definition of Development Period, on summary judgment the trial court turned to section 26 of the CC&Rs:

> **Establishment of Association.** In order to enforce the provisions of this Declaration, there shall be formed the Association which shall be organized in a democratic manner and become effective at a meeting of the Designated Owners of the Lots *within twenty-four (24) months after the date of recordation of the plat of Dave's View at Martin's Bluff or after Declarant has sold all but two (2) Lots, whichever is later.* The Declarant shall arrange for the calling of the first meeting of the Association. The Association shall elect such officers and establish such bylaws, rules and regulations for the operation of the Association and enforcement of this Declaration that are reasonably required. [6]

CP at 31 (emphasis added). In its summary judgment order the trial court defined "Development Period" with reference to section 26, "In accordance with the *specific provisions of the controlling instrument at §26*, the Development Period for Phase One concluded 24 months from recordation of the Plat or when the Developer had sold all but 2 Lots therein [January 31, 2006.]" CP at 366 (alteration in original) (emphasis added). After trial, the trial court's finding of fact 3 was almost identical to the summary judgment finding except for the reference to section 26.

---

[6] The italicized portion of section 26 is similar but not identical to article 3.3 of the homeowners' association bylaws.

The trial court apparently used section 26 to clarify the meaning of Development Period. Although that section does not reference the Development Period, it does establish when the Phase 1 lot owners are authorized to form their *own* democratically organized homeowners' association independent of the association Dave's View formed before the CC&Rs even were recorded. The trial court apparently equated the date the Phase 1 lot owners had the right to control the homeowners' association with the end of the Development Period.

We agree that section 26 supports the conclusion that the Development Period ended based on the sale of lots in Phase 1 rather than all five phases. The bylaws vest extensive powers in the homeowners' association. Dave's View turning over the ability to exercise these powers to an independent homeowners' association – which under Section 26 clearly must occur once all but two of the lots in Phase 1 are sold – is inconsistent with Dave's View retaining similar powers during a longer Development Period. Accordingly, by holding that the Development Period ended based on the sale of lots in Phase 1, we avoid an unreasonable construction of the CC&Rs. *Better Fin. Solutions*, 112 Wn. App. at 712 n.40.

d. Extrinsic Evidence

Under the context rule, we may look to extrinsic evidence to assist in interpreting the CC&Rs. *Berg*, 115 Wn.2d at 667. However, although Dave's View briefly mentions the rule, it does not specifically identify any extrinsic evidence we should consider in determining the meaning of Development Period. Similarly, although Chad Wilson testified at trial, Dave's View provided no citations to his testimony and no argument that Wilson's testimony should be used to interpret the CC&Rs.

The extrinsic evidence we find most significant is the fact that Dave's View recorded a second declaration of covenants for the lots in Phase 2. Dave's View established a separate

13

development for Phase 2 rather than adding those lots to the property – comprised of the lots in Phase 1 – subject to the original declaration of covenants. The decision to keep Phase 2 separate from Phase 1 indicates an intention to end the Phase 1 Development Period once all but two lots had been sold in Phase 1.

e.   Conclusion

We conclude that based on the considerations discussed above, the most reasonable interpretation of the CC&Rs is that the Development Period ended once Dave's View no longer owned at least two lots in Phase 1. One other factor supports our conclusion. The CC&Rs are confusing and ambiguous regarding the duration of the Development Period. Dave's View had the opportunity to use clear language stating when the Development Period would end, but did not. Accordingly, we resolve the uncertainty created by the CC&R provisions against Dave's View, the drafter.[7]

3.   Finding of Fact 8

Dave's View assigns error to finding of fact 8, which provides, "The Association should have been turned over to the Phase 1 lot owners as of January 31, 2006." CP at 370. We hold that the clear language of section 26 and the undisputed evidence regarding the sale of Phase 1 lots supports this finding/conclusion.

Section 26 required Dave's View to permit the homeowners to form a democratically elected homeowners' association comprised of designated lot owners after Dave's View "sold all

---

[7] We note one possible error in finding of fact 3. That finding states that the Development Period ended upon the "sale of thirty-three of the thirty-five lots in Phase 1," which is based on the language in section 26. CP at 370. The definition of Development Period in the CC&Rs referred to the period as ending when the Declarant no longer holds title to at least two lots in Phase 1, which suggests that the period would end upon the sale of 34 rather than 33 of the 35 lots. However, Dave's View does not argue that finding of fact 3 was in error for that reason, and therefore we need not address this difference in language.

but two (2) Lots." CP at 31. As noted above, Section 1(k) defines "Lots" as "35 individual tracts of real property comprising Phase 1 of Dave's View at Martin's Bluff (along with subsequent additional lots which may be added to the Property by Declarant) as divided by deed from the Declarant." CP at 24. Dave's View did not affirmatively exercise its right to add additional lots to the property. Therefore, section 26 unequivocally provides that the Phase 1 lot owners had the right to control the homeowners' association after Dave's View sold all but two of the lots *in Phase 1*, not all but two lots in all five phases. And it is undisputed that Dave's View had sold all but two lots in Phase 1 by January 31, 2006.

We hold that the trial court properly concluded in finding of fact 8 that Dave's View was required to turn over control of the homeowners' association to the Phase 1 lot owners by January 31, 2006.

## C.    FINDINGS OF FACT 4 AND 5

Dave's View assigns error to the trial court's finding of fact 4, which provides that "[t]he Developer reserved the right to add property to the Association but has not done so." CP at 370. However, Dave's View does not support this assignment of error with argument or citation to authority. And in any event, this finding is supported by substantial evidence.

Dave's View does not argue that it affirmatively added any property to the homeowners' association other than Phase 1, and nothing in the record establishes that it did. The original declaration of CC&Rs only included the Phase 1 property. And Dave's View recorded a separate declaration of CC&Rs for Phase 2 rather than adding Phase 2 to the Phase 1 declarations. As noted above, Dave's View argues that the property in other phases automatically was added to the property described in the original declaration. But the declaration states that Phases 2, 3, 4 and/or 5 *may be* added to the Phase 1 property. This

15

indicates that the addition of new property was left to the declarant's discretion and was not automatic.

Dave's View also assigns error to finding of fact 5, which provides that "[t]he Declaration does not provide for any extension of the Development Period for Phase 1." CP at 370. But because Dave's View fails to make any arguments supporting its challenge, we decline under RAP 10.3(a)(6) to address this assignment of error.

D.     COLLECTING ASSESSMENTS AND MAINTAINING COMMON AREAS

Dave's View assigns error to the trial court's findings of fact 6 and 7, which relate to collecting assessments for and maintaining common areas. Those findings provide:

> 6) The Homeowners' Association exists to collect assessments and maintain the common areas of the Property which currently encompasses the common areas of Phase 1 as delineated on the Plat, and any other property which is later added by the Developer.
> 7) The Association owes a duty to the Developer and Lot Owners to maintain the common areas, which common areas include all of the common areas delineated on the plat of Phase 1 and the main private road known as Dave's View Drive which is shared with Phases 2 and 3.

CP at 370. Although these rulings are designated as findings of fact, because they involve interpretation of applicable statutes and the homeowners' association's governing documents they include conclusions of law that we review de novo. We hold that the trial court did not err in entering these findings and conclusions.

Dave's View first argues that these findings conflict with RCW 64.38.020(10). RCW 64.38.020(10) provides that a homeowners' association may "[i]mpose and collect any payments, fees, or charges for the use, rental, or operation of the common areas." However, Dave's View appears to challenge these findings insofar as they limit the homeowners' association's ability to collect assessments for and duty to maintain those common areas

16

associated with Phase 1. The statute is silent on the *scope* of the homeowners' association's authority and duty regarding common areas in a multiple phase development. We hold that findings of fact 6 and 7 do not conflict with RCW 64.38.020(10).

Dave's View next argues that these findings conflict with various provisions in the homeowners' association's bylaws. The bylaws provide:

> 6.3.  **Authority and Powers of the Board of Directors.** . . . [T]he Board of Directors may exercise all such powers of the Association and do all such lawful acts and things as are not directed or required to be exercised or done by the members of the Association by statute or by the Articles of Incorporation or by these Bylaws, including, but not limited to, the following:
> 1. To levy and collect assessments, annually, quarterly, monthly, or otherwise, to cover the cost of operating, repairing, improving, insuring and maintaining Association Property;
> 2. To use and expand the assessments collected to maintain, improve, pay taxes, care for, replace and preserve Association Property;
>
> . . . .
>
> 8. To bring and defend actions by or against one or more existing or former members, directors, officers, or agents pertinent to the operation of the Association and to levy special assessments to pay the cost of such litigation.

CP at 196-97. Article 10.1 of the bylaws also provides that "[t]he Board of Directors shall have the power to adopt and amend budgets for revenues, expenditures, and reserves, and impose and collect assessments for common expenses from owners." CP at 207.

The bylaws also address the scope of the homeowners' association's authority. Article 3 states that the association's "jurisdiction" would be "all of the real property legally described as Dave's View at Martin's Bluff, plat(s) [and] phases 1-5". CP at 193. But this provision conflicts with the CC&Rs, which limit the applicable property to Phase 1 plus any additional phases the

declarant added.[8] Article 12.5.3 of the bylaws expressly provides that if there is any conflict between the CC&Rs and the bylaws, the CC&Rs control. Accordingly, findings of fact 6 and 7 do not conflict with the homeowners' association's governing documents.

We hold that conclusions 6 and 7 are not erroneous, and that the trial court properly limited the homeowners' association's scope of authority and duty to those common areas associated with Phase 1.

E.    LIENS FOR PAST DUE ASSESSMENTS

Dave's View argues that findings of fact 22 and 31, which relate to the imposition of liens against the lot owners' property for failure to pay past due assessments, violate the homeowners' association's governing documents and RCW 64.38.020(11). We hold that finding of fact 22 was not erroneous and that although finding of fact 31 was erroneous, Dave's View fails to ask for any meaningful relief based on this error.

1.    Finding of Fact 22

Finding of fact 22 states that "[t]here can be no recordings against Lot Owner titles without proper rules for enforcement and appeal." CP at 372. Although this ruling was designated as a finding of fact, it is a conclusion of law and we review the finding de novo. We note that the finding does not state that Dave's View failed to follow proper procedures before imposing recordings against lot owners. Rather, it simply states that there must be proper procedures in place before such liens can be imposed. None of the provisions in the bylaws or articles that Dave's View cites contradicts the conclusion that proper procedures are required before imposing a lien on a homeowner's property.

---

[8] As we held above, substantial evidence supports the trial court's finding that Dave's View did not add any other phases to the property governed by the CC&Rs.

Dave's View argues that the conclusion conflicts with RCW 64.38.020(11), but that statute actually supports the trial court's conclusion. RCW 64.38.020(11) provides that a homeowners' association may

> [i]mpose and collect charges for late payments of assessments and, after notice and an opportunity to be heard by the board of directors or by the representative designated by the board of directors and in accordance with the procedures as provided in the bylaws or rules and regulations adopted by the board of directors, levy reasonable fines in accordance with a previously established schedule adopted by the board of directors and furnished to the owners for violation of the bylaws, rules, and regulations of the association.

Although the statute says nothing about recordings against homeowners' properties, it states that the homeowners' association must provide notice and an opportunity to be heard and follow proper procedures before imposing fines on homeowners for violations of the association's bylaws. Presumably, before recording a notice of past due assessment on a homeowner's property, Dave's View was required under RCW 64.38.020(11) to comply with procedures set forth in the bylaws. Therefore, we hold that the trial court's conclusion that Dave's View was required to comply with requirements in RCW 64.38.020(11) was not erroneous.

2. Finding of Fact 31

Dave's View also challenges finding of fact 31, which provides that "[n]either the declarations nor the law gave authority to record Notices of past due assessments which were treated like liens against real property." CP at 373. Although this ruling was designated as a finding of fact, it is a conclusion of law and we review the finding de novo.

The lot owners do not dispute that the CC&Rs allowed the homeowners' association to record liens against their property for past due assessments. Section 28 of the CC&Rs provides:

> **28. Enforcement Provision.** The bylaws of the Association shall provide for enforcement of its assessments against the Lots subject thereto (including any Lots created by subdivision of a Lot) in any manner provided by its bylaws, including the provision of a lien imposed upon a Lot to secure payment of a delinquent assessment, with the lien to be enforced by the Association, or such other party as may be designated.

CP at 35. Further, article 6.4(7) of the bylaws provides that the authority to "assess any necessary fines or liens against lot owners" is reserved to the homeowners' association. CP at 198. Accordingly, because both the CC&Rs and bylaws allow the imposition of liens for past due assessments, finding of fact 31 was erroneous.

The lot owners nevertheless argue that when read in conjunction with the trial court's oral ruling, finding of fact 31 relates only to *Dave's View's* authority to impose liens, not the homeowners' association's authority to do so. Therefore, the lot owners argue, the conclusion was not erroneous. An ambiguous finding of fact or conclusion of law may be clarified by the trial court's oral opinion. *State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999); *In re Marriage of Getz*, 57 Wn. App. 602, 605 n.4, 789 P.2d 331 (1990).

We hold that the conclusion itself is not ambiguous. Therefore, no resort to the oral ruling is necessary. Finding of fact 31 originally provided that "[d]efendants did not have authority to record Notices of past due assessments which were treated like liens against real property." CP at 373. The phrase "[d]efendants did not have" was then crossed out and resulted in the trial court's adopted version of the finding, which provided that "[n]either the declarations nor the law gave authority to record Notices of past due assessments which were treated like liens against real property." CP at 373. Had the trial court wished to limit the conclusion to Dave's View only, it could have done so with the conclusion as originally written. By changing the language to apply more generally, the trial court indicated that no party had authority to

record liens in order to enforce assessments. The conclusion therefore was contrary to the CC&Rs and association bylaws, which permitted the homeowners' association to file liens against lot owners for past due assessments.

Moreover, even if finding of fact 31 applies to Dave's View only, we hold that it is nevertheless erroneous. Article 3.2 of the bylaws provided, "Declarant hereby reserves for itself . . . during the development period, all of the rights, powers and functions of the Association, its members or the Board itself, which shall be exercised and/or performed by the Declarant." CP at 193. Therefore, because Dave's View controlled the homeowners' association before January 31, 2006, it was permitted to impose liens against homeowners until that date.

Nevertheless, although finding of fact 31 was erroneous, Dave's View fails to request any relief stemming from reversal of this conclusion. Although the trial court ordered that Dave's View pay damages to one of the homeowners resulting from a lien for past due assessments, Dave's View does not challenge this part of the trial court's order. And Dave's View does not argue that it filed liens against the homeowners' properties before January 31, 2006, when it was authorized under the bylaws to do so. Accordingly, we decline to address the claim further.

F.     ATTORNEY FEES

The lot owners request attorney fees on appeal under RAP 18.1. Their only argument is that the trial court awarded attorney fees to them "as allowed under RCW 64.38.050." Br. of Resp't at 31. The lot owners provide no other basis for their request for attorney fees.

RCW 64.38.050 provides, "Any violation of the provisions of [the statutes governing homeowners' associations, chapter 64.38 RCW] entitles an aggrieved party to any remedy provided by law or in equity. The court, in an appropriate case, may award reasonable attorneys' fees to the prevailing party." But we do not base our decision on appeal on any violation of

21

No. 42687-1-II

chapter 64.38 RCW. Accordingly, RCW 64.38.050 is inapplicable and we deny the lot owners' request for fees on this basis.

We do not address whether the lot owners may be entitled to attorney fees under the CC&Rs because they do not request fees under the CC&Rs in the portion of their brief devoted to fees. A party seeking attorney fees under RAP 18.1 must provide argument and citation to authority supporting its request. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 705, 915 P.2d 1146 (1996).

Dave's View also requests attorney fees on appeal under RAP 18.1(b) and section 30 of the CC&Rs, which entitles the prevailing party in an action to enforce the terms of the CC&Rs to attorney fees. Because Dave's View is not the prevailing party, we deny its request for fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

PENOYAR, P.J.

SPEARMAN, J.

22