78 P.3d 191 (2003)
118 Wash.App. 643
In re the DEPENDENCY OF C.M., a minor.
State of Washington/D.S.H.S., Respondents,
v.
Dale McCracken, father, Appellant.
No. 51144-1-I.
Court of Appeals of Washington, Division 1.
September 15, 2003.
Publication Ordered October 14, 2003.
*192 Susasn Wilk, Nancy Collins, WA Appellate Project, Seattle, WA, for Appellant.
Winifred Melinda Wong, Office of The Public Defender, Seattle, WA, for Defendant.
Trisha McArdle, Lisa Peterson, Ofc of The Atty General, Seattle, WA, for Respondent.
COX, A.C.J.
Dale McCracken appeals the trial court's determination that his son, C.M., is a dependent child under RCW 13.34.030(5)(c). The Department of Social and Health Services ("Department") moved to modify a commissioner's ruling granting McCracken's motion to amend his notice of appeal to include the dispositional order as well as the dependency order entered in this case. We grant the motion in part. We also hold that the dependency order is subject to review by appeal, notwithstanding McCracken's decision not to assign error to the agreed dispositional order. And substantial evidence supports the challenged findings and the determination that C.M. is a dependent child. Accordingly, we affirm.
McCracken is the father and primary caregiver of C.M. McCracken and C.M.'s mother, Margery McCracken, are divorced but live together to share C.M.'s care. The Department investigated an allegation by Margery in April 2002 that McCracken had physically abused C.M. C.M. had been the subject of previous referrals and a previous dependency petition. Following the April 2002 allegation, the Department commenced a dependency proceeding, alleging that C.M. was a dependent child under RCW 13.34.030(5)(b) and (c). The trial court rejected the Department's reliance on RCW 13.34.030(5)(b), but granted the petition under RCW 13.34.030(5)(c).
McCracken appeals.

Motion to Modify Commissioner's Ruling
As a threshold matter, we address the Department's motion to modify a commissioner's ruling granting McCracken's motion to amend his notice of appeal. We grant the motion in part.
The original notice designated only the dependency order. The Department moved to dismiss the appeal because McCracken had neither appealed the dispositional order nor moved for discretionary review of the dependency order. In response, McCracken moved to amend the notice of appeal to include the dispositional order. The Department then took the position that the dispositional order in this case is not appealable because it is an agreed order. A commissioner granted the motion to amend the notice of appeal to include the dispositional order. The Department moved to modify that ruling.
Following the supreme court's recent ruling in In re Dependency of Brown,[1] we directed additional briefing by the parties in this case. In response to that directive, the Department states that it "no longer advocates that the only way to challenge the underlying dependency order is through discretionary review."[2] But it continues to assert that an agreed dispositional order in a dependency proceeding is not subject to appeal. Based on that assertion, the Department *193 requests modification of the commissioner's ruling.[3]
In Brown, the father of the child filed a notice of appeal designating both the dependency order and the dispositional order in that case. But in his opening brief, Brown only challenged the dependency order, not the dispositional order. In considering these facts and RAP 2.2(a)(5), the supreme court held that a dispositional order is an appealable order that, when designated in a notice of appeal, entitles one to advance any argument going to the validity of that order.[4] "A dispositional order depends on a valid dependency order."[5] Thus, an appeal of a dispositional order also brings up for review any proper challenge to the foundational dependency order.[6]
The commissioner's ruling here is consistent with these principles. McCracken originally designated only the dependency order in his notice of appeal. In response to the Department's motion to dismiss, he sought to amend the notice by adding to his designation the dispositional order. As illustrated by his brief, the focus of his appeal is directed to the dependency order, which the supreme court characterizes as the foundation for a dispositional order.[7] He does not directly attack the dispositional order itself. The amendment of the notice of appeal to include both orders puts this case on the same footing as Brown  both orders are effectively included within the notice of appeal.
Relying on the Washington Asphalt Co. v. Harold Kaeser Co.[8] line of cases, the Department maintains that McCracken should not be allowed to appeal the dispositional order in this case because it is an agreed order. The substance of the commissioner's ruling is not inconsistent with the rule stated in this line of cases. Under Brown, McCracken need not directly attack the dispositional order because such an attack is unnecessary. Rather, designation of the dispositional order in the notice of appeal without attacking it in the brief is permissible in order to obtain review by appeal of the dependency order. However, to the extent the commissioner's ruling states that the "appeal of the dispositional order may proceed limited to the finding of dependency,"[9] we modify that ruling. Direct attack on the agreed dispositional order is not necessary to obtain review of the foundational dependency order. We otherwise leave undisturbed the commissioner's ruling.[10]
McCracken's challenge to the dependency order is properly before us.

Sufficiency of the Evidence
Moving to the merits of the case, McCracken argues that there was insufficient evidence to support the court's finding that C.M. is a dependent child. We disagree.
The goal of a dependency hearing is to determine the welfare of the child and his best interests.[11] To declare a child dependent, the trial court must find by a preponderance of the evidence that the child meets one of the statutory definitions of dependency.[12] RCW 13.34.030(5) provides in part that a "dependent child" is one who:

*194 ...
(b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; or
(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.
The State alleged in the dependency petition that C.M. was dependent under subsections (b) and (c). The trial court found that the State had failed to prove that C.M. was dependent under subsection (b), but granted the petition under subsection (c). Thus, the question before us is whether there is sufficient evidence to support the trial court's determination that C.M. is a dependent child under subsection (c).
McCracken assigns error to findings 1.1, 1.7, 1.231.26, 1.28, and 1.29 as well as the conclusion that the Department had met its burden of proof by a preponderance of the evidence. To evaluate a claim of insufficient evidence of dependency, we determine whether substantial evidence supports the court's findings of fact and whether the findings support the conclusions of law.[13]
First, McCracken assigns error to "finding" 1.1 to the effect that the facts have been established by a preponderance of the evidence and that certain actions are necessary to ensure the well being of the child. We view this challenge in the context of the other more specific challenges.
McCracken also challenges Finding of Fact 1.7. But he fails to explain why this finding was insufficient. Similarly, McCracken assigns error to findings 1.24 and 1.25, but does not explain why. Thus, we need not address these challenges.[14]
McCracken assigns error to finding 1.23, arguing that the trial court erred in finding that "The slapping incident on April 22, 2002 resulted in harm and injury to Christopher." McCracken cites his own testimony that he merely slapped C.M. on the face once with his fingertips.
But there is substantial evidence from other testimony at trial that supports the finding that C.M. was harmed and injured in the incident. Margery McCracken testified that C.M. was crying when she arrived home that day. His face was red but Margery was not sure if that was because of the slap or because he was upset. Two days later, C.M.'s cheek showed fingerprints and slight bruising. The CPS investigator in the case, Darell Brave, testified that two days after the incident he saw an "elongated bruise" that looked like two fingers on C.M.'s face. He described the bruise on C.M.'s face and the "reddening marks" on his buttocks as faint.
McCracken argues that the evidence was insufficient because corroborating photographs were not introduced into evidence. But the testimony presented, viewed in the light most favorable to the State, is sufficient without corroborating photographs.
McCracken argues under various legal standards that the evidence does not support a finding of harm. But the trial court did not find that McCracken's actions were unlawful, and explicitly held that the incident did not meet the definition of abuse or neglect. Thus, these legal standards are not applicable.
McCracken argues that the trial court erred in entering finding 1.28 because it was inconsistent with the court's oral ruling and unsupported by substantial evidence.[15] But a trial court's oral opinion is only a verbal expression of its informal opinion. *195 at the time, and may be altered, modified, or completely abandoned.[16] Where, as here, the trial court's written findings and conclusions are unambiguous, it is unnecessary to look to the oral ruling to interpret the written conclusions.[17] And McCracken fails to cite to the record or provide any argument for his statement that the finding was unsupported by the record.
McCracken's arguments regarding findings 1.26 and 1.29 are integrated in his main argument regarding the court's finding of dependency, that McCracken's mental illness did not impair his ability to care for C.M., and that the court could not rely on C.M.'s special needs as a basis for a finding of dependency. In Finding 1.26, the court stated:
It is no less than a truism that it is difficult to parent in the best of circumstances. Under these extenuating circumstances, where the parents have their own mental health issues and the child has special needs, it is even more difficult. The court must look not only at the ability of the father to care for [C.M.] but also his interactions with a special needs child. Here the difficulty of parenting is compounded because of the parents' abilities and the special needs of the child. Specifically, the testimony of [C.M.'s] pediatrician that he suffers from significant developmental delays, he has problems with speech at the age of eight, and may be autistic.
In Finding of Fact 1.29, the court stated:
However, it is clear that the special needs of the child have not been met in the father's home. Based on the record, the child is in need of significant services. The child is in circumstances which constitute a danger of substantial damage to his physical and psychological development because these special needs are not being addressed and met.
Contrary to McCracken's argument that the trial court based its finding of dependency solely on C.M.'s special needs, the trial court based its decision on a finding that C.M.'s special needs were not being met, at least in part because his father's mental health issues and parenting skills prevented him from fully addressing C.M.'s needs. While the record is replete with evidence that McCracken has done his best to address C.M.'s needs, there is also substantial evidence that C.M.'s needs are not being fully met and that he is in danger of substantial damage to his psychological development.
McCracken testified that C.M.'s IQ has been estimated to be around 60 or perhaps in the 70s. C.M. began walking at 16 months and has speech delays. He was "extremely difficult" to understand at age three, and is still "not that easy" to understand at eight. C.M.'s pediatrician, Dr. David Reigel, testified that C.M. has had language development delays. He prescribed Aderol for C.M. after discussions with his day care provider, but had not definitively diagnosed C.M. with attention deficit hyperactivity disorder (ADHD). Dr. Reigel was also concerned that C.M.'s memory was not very good. He testified that C.M. cannot remember or describe incidents in the past, which an average child can usually do at the age of three and a half to four. Dr. Reigel discussed this in the context of both speech and memory delays. Dr. Reigel did not know the cause of C.M.'s delays, but suspected that they were probably due to mental retardation and learning disabilities.
Dr. Reigel testified that he did not think it would be good to remove C.M. from his father's care. And he testified that he believed that McCracken wanted to do well as a parent, that he cared about C.M., and wanted to do the best for him. Further, he testified that McCracken had attended parenting classes and that he believed that McCracken tried to use what he learned in the classes in caring for C.M. When asked if there was anything more McCracken could have done to help C.M. he stated "I think he's done the best he can." Dr. Reigel stated "I think his heart is in the right place, and I think he's done an adequate job."
But Dr. Reigel testified that he had concerns about McCracken's care. And when *196 asked if McCracken was addressing those concerns, he responded "Yes, I think he tries to." Dr. Reigel stated that he was concerned in C.M.'s "earlier years" that he was not getting enough stimulation from activities like talking to him, reading to him, and other developmental interactions. He believed this was because "men are not naturally parents" and because McCracken is not as intuitive as an average person to a child's needs. He believed that McCracken's mental illness "probably" affects C.M. because, in Dr. Reigel's opinion, McCracken "has enough problems of his own that he's not able to  to attend to his child necessarily as much as a  as an average parent."
An evaluation by a therapist performing "Intensive Family Preservation Services" reported that McCracken and Margery were "fully engaged" in the services, asking for help with parenting skills, and willing to accept other services.[18] But it also reported that McCracken's cognitive problems interfered with his ability to implement a parenting technique, so the therapist encouraged him to use a simpler method.[19] And the therapist noted that both parents had severe mental health diagnoses and that C.M. had significant cognitive delays, concluding that it was important for C.M. to "have supportive services outside the family to help with his cognitive and emotional development."[20]
McCracken overstates the record in asserting that he received an "unreservedly positive" assessment by Dr. Malcolm in his parenting evaluation written in September 2000. He argues that "Dr. Malcolm concluded definitively: `[Mr. McCracken] appears to possess the basic parenting skills required.'" The cited passage actually states:
[McCracken] appears to possess the basic parenting skills required to keep [C.M.] safe, clothed, and enrolled in school. He demonstrates what seems to be a genuine affection and interest in his son. However, [he] admits he has difficulty maintaining a clean home, and that he has difficulty controlling [C.M.'s] behavior at times. It appears that [C.M.] for the most part does what he wants to do, with minimal intervention from his father.[21]
The report then recommends that McCracken be enrolled in short-term home-based parenting training. It further recommended, "In order to avoid an exacerbation of [McCracken's] psychiatric symptoms, stress management training is recommended." Dr. Malcolm advised that the "ability to deal with stress is also an asset in terms of effective parenting, particularly with a child diagnosed as having ADHD and developmental delays."[22]
McCracken also argues that the record shows that he took proactive measures to foster his son's development and address his developmental delays. But the trial court did not find that McCracken failed to care for his son or failed to try to do what he needed to do to help C.M. develop. Rather, the court explicitly found that it was "uncontroverted that there is a great deal of love, affection, caring and bonding between the father, Dale McCracken, and his son, C.M." The court found only that McCracken's efforts were not succeeding in meeting C.M.'s needs.
While the record shows that McCracken loves C.M. and does his best to care for him, there remains substantial evidence that C.M. has developmental delays that could result in significant psychological damage if they remain unaddressed. And there is substantial evidence that McCracken's own mental illness and poor judgment have affected his ability to address these delays, despite his best intentions and his best efforts.
McCracken argues that the Department did not prove that C.M. was dependent because it failed to prove that he was "currently unavailable to parent C.M.", relying on In re Walker.[23]Walker is inapposite.
*197 The definition of dependent child at issue in this case was not discussed in Walker. McCracken relies only on that court's general comment "that an existing ability or capacity of parents adequately and properly to care for their children is inconsistent with a status of dependency."[24] This principle does not conflict with the trial court's ruling here. While the evidence shows that McCracken can adequately care for C.M.'s basic needs, the trial court's finding that C.M.'s developmental needs have not been met is supported by substantial evidence, and meets both the definition of dependent child in RCW 13.34.030(5)(c) and the general principle stated in Walker.
We affirm the order of dependency.
ELLINGTON and COLEMAN, JJ., concur.
NOTES
[1] 149 Wash.2d 836, 72 P.3d 757 (2003).
[2] Department's Second Supplemental Briefing Re: Appealability of Agreed Disposition Order at 2.
[3] Id.
[4] Brown, 72 P.3d at 758.
[5] Brown, 72 P.3d at 758.
[6] Brown, 72 P.3d at 758-759.
[7] Brown, 72 P.3d at 758-59.
[8] 51 Wash.2d 89, 316 P.2d 126 (1957).
[9] Commissioner's Ruling Granting Appellant's Motion to Amend Notice of Appeal at 1 (italics ours).
[10] Because the parties do not address in their briefing the issue of merger that Washington Asphalt raises, we do not address that issue in this case. Moreover, we do not address the several policy arguments that the parties advance in their briefs to support their respective positions because it is unnecessary to do so in this case.
[11] In re Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980); In re Becker, 87 Wash.2d 470, 553 P.2d 1339 (1976).
[12] RCW 13.34.130; In re Key, 119 Wash.2d 600, 612, 836 P.2d 200 (1992), cert. denied, 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993).
[13] In re M.P., 76 Wash.App. 87, 90, 882 P.2d 1180 (1994), review denied, 126 Wash.2d 1012, 892 P.2d 1089 (1995).
[14] See RAP 10.3(a)(5); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[15] The trial court, in that finding, stated, "The incident of 4/22/02 cannot be looked at as an isolated incident, but must be taken in context with the family's prior CPS history, previous dependency, and numerous services provided to the family. The father had agreed not to use corporal punishment. However, the court finds that the slapping incident was not of extreme abuse and the State has not met it's [sic] burden for a (b) dependency."
[16] State v. Hescock, 98 Wash.App. 600, 605-06, 989 P.2d 1251 (1999).
[17] Hescock, 98 Wash.App. at 606, 989 P.2d 1251 (italics ours).
[18] Exhibit 18 at 2.
[19] Exhibit 18 at 1.
[20] Exhibit 18 at 1.
[21] Exhibit 19 at 7.
[22] Exhibit 19 at 7.
[23] 43 Wash.2d 710, 263 P.2d 956 (1953).
[24] Walker, 43 Wash.2d at 715, 263 P.2d 956.