# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Welfare of: | No. 50904-1-II |
| A.L.C. | |
| A minor child. | ORDER AMENDING OPINION |

On its own motion, this court orders the above opinion amended as follows:

On page 6, line 6 of the slip opinion, the parenthetical following the citation *See Willener v.*

*Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986), that reads:

(findings of fact erroneously described as conclusions of law are reviewed as conclusions of law; conclusions of law erroneously described as findings of fact are reviewed as findings of fact).

is deleted. The following parenthetical is inserted in its place:

(findings of fact erroneously described as conclusions of law are reviewed as findings of fact; conclusions of law erroneously described as findings of fact are reviewed as conclusions of law).

IT IS SO ORDERED.

FOR THE COURT: Jj. Worswick, Lee, Sutton

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Welfare of<br><br>A.L.C.,<br><br>                    A minor child. | No. 50904-1-II<br><br><br>ORDER GRANTING<br>MOTION TO PUBLISH |

Appellant, J.C., the father, filed a motion to publish this court's opinion filed on January 23, 2019.  After consideration, the court grants the motion.  It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.  It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**:  Jj. Worswick, Lee, Sutton

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Welfare of:<br><br>A.L.C.<br><br>A minor child. | No. 50904-1-II<br><br>UNPUBLISHED OPINION |

Lee, A.C.J. — J.C., the father of A.L.C., appeals the juvenile court's finding that the Department of Children, Youth, and Families has made active efforts to reunify him with A.L.C. during the current dependency. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

J.C. and S.K. are the parents of A.L.C., born 2013. J.C. and A.L.C. are enrolled members of the Samish Indian Nation. Thus, A.L.C. is an Indian child for the purposes of both the federal and state Indian Child Welfare Acts (ICWA/WICWA).

S.K. has an extensive history of heroin and methamphetamine abuse. On February 23, 2017, law enforcement removed A.L.C. from the garage in which S.K. was living. The garage had multiple bags of garbage inside, as well as spoiled milk and molded food. There were also used hypodermic needles throughout the garage.

A.L.C. was placed in licensed foster care. The Department filed a dependency petition and a shelter care hearing was set.

J.C. agreed to a shelter care order placing A.L.C. in licensed foster care until he could obtain suitable housing. At the shelter care hearing, the juvenile court found,

Father is now homeless—it will be a significant change of circumstances which may allow for further shelter care proceedings if Father obtains suitable housing.

Clerk's Papers (CP) at 17.

On April 17, J.C. agreed to an order of dependency as to A.L.C. The dependency order included the following agreed facts,

Father specifically denies that [A.L.C.] was living in the conditions in which [A.L.C.] was found but does agree that he should not have allowed [A.L.C.] to visit with [A.L.C.'s] mother at that location; the location was not safe or appropriate and it was his responsibility to ensure [A.L.C]'s safety. Father also specifically denies that he uses illegal narcotics; he has been clean and sober for well over 6 years.

Subsequent to the removal of [A.L.C.] [J.C.] has become homeless and he no longer has a safe home to provide for [A.L.C.]. [J.C.] needs help in re-building an appropriate home for [A.L.C.] including: housing services; counseling/domestic violence (victim's) support to aid him in establishing appropriate boundaries with [A.L.C.]'s mother which allow for a safe relationship for mother and [A.L.C.]; and assistance with further parenting education to maximize the relationship between father and [A.L.C.].

CP at 28.

On May 1, the juvenile court entered a dispositional order. The dispositional order ordered services for J.C. including a mental health intake and "co-dependency group of a non-abusing spouse," a domestic violence assessment, a parenting assessment, and parenting classes. CP at 57.

Prior to the dependency review hearing, J.C. responded to a Department report filed with the court by arguing that the State had failed to make active efforts to reunify the family as required by ICWA and WICWA. J.C. alleged that the only action the Department had made regarding the

ordered services was one domestic violence referral 46 days after the dispositional order was entered. And this failure to act did not meet the active efforts requirement of ICWA and WICWA.

On August 21, the juvenile court held a dependency review hearing. The social worker, who had just taken over the case two-and-a-half weeks earlier, updated the court on the services that had been provided to J.C. The Department had provided a referral to a domestic violence assessment and that had been completed. The Department obtained a referral for participation in a domestic violence parenting class. However, the class was already 4 weeks into a 12-week session, so J.C. would have to wait until the next session to begin the class. The social worker had also located a provider for the parenting assessment and was "in discussions with [J.C.]'s attorney about whether or not we are moving forward with that local provider or looking at a provider outside the area." Verbatim Report of Proceedings (VRP) at 4. J.C. also had regular visitation with A.L.C.

The social worker recommended that the juvenile court find J.C. in partial compliance with no progress. The social worker explained her recommendation:

> [J.C.] states he's still looking for housing and that he's currently living, quote, at the shop again. He states that he's having difficulty maintaining a steady means of communication with the department because [S.K.] still has access to his belongings, and she frequently takes his phone and his car keys, so I have expressed to [J.C.] that it's critically important that he maintain his lines of communication so that we can move forward with his services.
>
> . . . .
>
> . . . I don't believe there's been progress made at this time. I would agree with partial progress that he has done some things. He did—he has been visiting regularly. He did comply with the [urinalysis tests] that were requested of him during this review period, but I don't believe that he's made any progress at this time.

It still seems as if he is working with his relationship with [S.K.], and that is thwarting his progress at this time. So I would say no progress.

VRP at 4-5. The guardian ad litem also expressed concerns about J.C. continuing his relationship with S.K. and continuing to live at the shop.

J.C. argued that the Department's efforts in this case did not meet ICWA requirements for active efforts to reunite the family. As to housing, J.C. stated,

He is homeless, and until the society fixes that issue, at least he has a roof over his head and facilities to use. He has a line on two potential different homes, that they both need significant work, but that's something that he's working avidly on.

VRP at 14. J.C. also outlined his participation in services he coordinated himself such as applying for social security benefits and obtaining counseling services. But he argued that he had been unable to complete the parenting assessment, the parenting class, or the DV parenting class because the Department had not made active efforts.

The Department argued that the juvenile court should find that active efforts had been made because "active efforts isn't perfect efforts" and "[s]ocial work isn't perfect." VRP at 17. The Department recognized that there was a delay in getting the domestic violence assessment referral but that "within the larger scope of housing and the assessment actually happening and UA's actually happening that that one minor defect does not push this case below active efforts." VRP at 19-20.

The juvenile court found that active efforts had been made. Specifically, the juvenile court stated,

So I do find that there have been active efforts involved in this case based on what I have heard. Are they all of the efforts? Probably not, but they are active efforts, so I will make that finding.

VRP at 21. The juvenile court entered a dependency review hearing order which included the following finding regarding active efforts:

> DSHS/Supervising Agency has made ~~reasonable~~ <u>active</u> efforts to provide services to the family and eliminate the need for out-of-home placement of the child.

CP at 82 (alterations in original) (emphasis in original)

J.C. sought discretionary review of the juvenile court's finding regarding the Department's active efforts. A commissioner of this court granted J.C.'s motion for discretionary review of the juvenile court's active efforts finding.

## ANALYSIS

A.      ACTIVE EFFORTS

J.C. argues that the Department has failed to comply with the active efforts requirements under ICWA and WICWA. We agree.

        1.      Standard of Review

The parties dispute the appropriate standard of review in this case. J.C. argues that we should review the trial court's active efforts finding de novo. The Department argues that we review the juvenile court's active efforts finding for substantial evidence. Here, the juvenile court's active efforts finding is a conclusion of law that we review de novo.

We review a juvenile court's findings in a dependency to determine whether the findings are supported by substantial evidence. *In re Dependency of C.M.*, 118 Wn. App. 643, 649, 78 P.3d 191 (2003). Evidence is substantial when, viewed in the light most favorable to the prevailing party, a rational trier of fact could find the fact by a preponderance of the evidence. *In re Dependency of E.L.F.*, 117 Wn. App. 241, 245, 70 P.3d 163 (2003). Unchallenged findings of fact

are verities on appeal. *In re Dependency of P.D.*, 58 Wn. App. 18, 30, 792 P.2d 159, 115 Wn.2d 1019 (1990). We review a juvenile court's conclusions of law de novo to determine whether the juvenile court's findings support its conclusions of law. *See C.M.*, 118 Wn. App. at 649; *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42-43, 59 P.3d 611 (2002).

It is well-established that the labels used by the juvenile court do not control our review of findings of fact and conclusions of law. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (findings of fact erroneously described as conclusions of law are reviewed as conclusions of law; conclusions of law erroneously described as findings of fact are reviewed as findings of fact). " 'If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact.' " *Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 99, 362 P.3d 302 (quoting *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n. 5, 584 P.2d 968 (1978)), *review denied*, 185 Wn.2d 1023 (2015). However, " 'if a determination is made by a process of legal reasoning from, or interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law.' " *Goodeill*, 191 Wn. App. at 99 (quoting *Moulden & Sons*, 21 Wn. App. at 197 n. 5).

Here, what services have actually been ordered, referred, provided, or participated in are properly designated findings of fact because they are determinations of whether something occurred based on the evidence before the court. However, whether those services meet the statutory requirement of active efforts requires statutory interpretation to determine the legal significance of those underlying facts. Therefore, whether the Department has satisfied the active efforts requirement is properly designated a conclusion of law and should be reviewed de novo to determine whether that conclusion is supported by the juvenile court's findings of fact.

2.      ICWA and WICWA requirements

Both ICWA and WICWA require the juvenile court to determine that active efforts have

been made to prevent the breakup of an Indian family.  ICWA provides,

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d).  Similarly, WICWA provides,

> A party seeking to effect an involuntary foster care placement of or the involuntary termination of parental rights to an Indian child shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

RCW 13.38.130(1).  We will apply these provisions coextensively unless one provision provides

greater protection than the other, in which case, we will apply the more protective act.  *In re*

*Adoption of T.A.W.*, 186 Wn.2d 828, 844, 383 P.3d 492 (2016).

ICWA does not provide a statutory definition of active efforts.  Instead, active efforts are

defined in the implementing federal regulations, 25 C.F.R. § 23.2.  The federal regulations provide

an extensive definition of active efforts:

> Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family. Where an agency is involved in the child-custody proceeding, active efforts must involve assisting the parent or parents or Indian custodian through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan. To the maximum extent possible, active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the Indian child and the Indian child's parents, extended family members, Indian custodians, and Tribe. Active efforts are to be tailored to the facts and circumstances of the case.

7

25 C.F.R. § 23.2. The federal regulations also provide examples of what may be included as active

efforts:

> Supporting regular visits with parents or Indian custodians in the most natural setting possible as well as trial home visits of the Indian child during any period of removal, consistent with the need to ensure the health, safety, and welfare of the child;
>
> . . . Identifying community resources including housing, financial, transportation, mental health, substance abuse, and peer support services and actively assisting the Indian child's parents or, when appropriate, the child's family, in utilizing and accessing those resources;
>
> . . . .
>
> . . . Considering alternative ways to address the needs of the Indian child's parents and, where appropriate, the family, if the optimum services do not exist or are not available.

25 C.F.R. § 23.2 ("active efforts" examples (7),(8), and (10)).

Unlike ICWA, WICWA provides a statutory definition of active efforts. RCW 13.38.040.

When the Department is required to provide services under a dispositional order, WICWA requires

that

> the department or supervising agency shall make timely and diligent efforts to provide or procure such services, including engaging the parent or parents or Indian custodian in reasonably available and culturally appropriate preventative, remedial, or rehabilitative services. This shall include those services offered by tribes and Indian organizations whenever possible.

RCW 13.38.040(1)(a). When the Department is seeking to continue out-of-home placement of an

Indian child in a dependency proceeding, minimum active efforts require that

> the department or supervising agency must show to the court that it has actively worked with the parent, parents, or Indian custodian in accordance with existing court orders and the individual service plan to engage them in remedial services

and rehabilitative programs to prevent the breakup of the family beyond simply providing referrals to such services.

RCW 13.38.040(1)(a)(ii).

3.      Department has not made active efforts

Here, the services provided by the Department at the time of the August 21 dependency review hearing do not support the juvenile court's conclusion that the Department satisfied the active efforts requirements under either ICWA or WICWA. The dispositional order entered in May required J.C. to engage in a DV assessment and follow recommendations, engage in a parenting assessment, and engage in a parenting class. However, by August, the Department had done little more than provide J.C. with a referral for the DV assessment.

ICWA requires affirmative, active, thorough, and timely efforts to provide services, including identifying community resources relating to housing. 25 C.F.R. § 23.2(8). And WICWA requires that the Department do more than simply provide referrals for services; WICWA requires timely and diligent efforts to provide or procure services. RCW 13.38.040(1)(a)(ii).

Here, the Department's efforts were not timely because several months had passed since the court ordered services, and the Department had not provided access to or referrals for the majority of the court-ordered services. Six weeks had passed before the Department provided J.C. with a referral for a DV assessment. The Department did not provide J.C. with a referral for the recommended parenting class until it was too late for J.C. to begin the class. In addition, the Department had little, if any, involvement in the services that J.C. was able to successfully access and complete. Moreover, the Department recognized that housing was an issue contributing to the dependency and need for services, but the record is devoid of any efforts made by the Department

to assist J.C. in identifying housing resources much less assist J.C. with "utilizing and accessing" housing resources. 25 C.F.R. § 23.2(8). By providing no referrals or untimely referrals, the Department failed to make active efforts to maintain or reunite A.L.C. with J.C. Accordingly, the juvenile court erred in concluding that the Department made active efforts under WICWA and ICWA.

B.      JUVENILE COURT'S COMPLIANCE WITH ICWA REQUIREMENTS

J.C. argues that the juvenile court failed to comply with ICWA and WICWA requirements due to the form of its active efforts determination. Specifically, J.C. argues that the juvenile court failed to document the active efforts made in detail in the record and the language of the juvenile court's conclusion does not contain any of the statutory language defining active efforts under either ICWA or WICWA. We disagree.

1.      Standard of Review

We review whether the juvenile court complied with statutory requirements de novo. *See State v. Stone*, 165 Wn. App. 796, 806, 268 P.3d 226 (2012) (reviewing whether trial court properly applied legal financial obligation enforcement statutes de novo); *State v. Johnson*, 96 Wn. App. 813, 816, 981 P.2d 25 (1999) (reviewing whether the trial court complied with the requirements of the restitution statutes de novo).

2.      Juvenile Court Complied with ICWA Requirements

Federal ICWA regulation 25 C.F.R. § 23.120(b) requires that "[a]ctive efforts must be documented in detail in the record." Here, the Department's efforts are well-documented in the record. The social worker gave a statement to the juvenile court on the record, and the Department submitted a report that also outlined the Department's efforts. Moreover, nothing in ICWA or

WICWA require that the juvenile court's finding of active efforts contain specific language or take a specific form. Therefore, J.C.'s challenge as to form fails.

C.      REMEDY

J.C. argues that the appropriate remedy in this case is for this court to retain jurisdiction of the dependency to ensure the Department's compliance with the active efforts requirements of ICWA and WICWA. We disagree.

Both ICWA and WICWA have provisions for the appropriate remedy when an Indian child is improperly removed by the State from his or her home or the State improperly maintains custody. Under ICWA,

> Where any petitioner in an Indian child custody proceeding before a State court has improperly removed the child from custody of the parent or Indian custodian or has improperly retained custody after a visit or other temporary relinquishment of custody, the court shall decline jurisdiction over such petition and shall forthwith return the child to his parent or Indian custodian unless returning the child to his parent or custodian would subject the child to a substantial and immediate danger or threat of such danger.

25 U.S.C. § 1920. Similarly, under WICWA,

> If a petitioner in a child custody proceeding under this chapter has improperly removed the child from the custody of the parent or Indian custodian or has improperly retained custody after a visit or other temporary relinquishment of custody, the court shall decline jurisdiction over the petition and shall immediately return the child to the child's parent or Indian custodian unless returning the child to the parent or Indian custodian would subject the child to substantial and immediate danger or threat of such danger.

RCW 13.38.160.

Here, the Department has improperly maintained A.L.C's placement in out-of-home care because the Department has failed to provide active efforts to prevent the breakup of the Indian family. The appropriate remedy is the remedy prescribed by statute. Thus, we remand to the

No. 50904-1-II

juvenile court to either immediately return A.L.C. or make the statutorily required finding that returning A.L.C. will subject her to substantial and immediate danger or threat of such danger.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

12