IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 36485-2-III |
| | ) | |
| D.D. | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, A.C.J. — D.D.'s father challenges the sufficiency of the evidence for the

juvenile court's determination that D.D. was dependent under RCW 13.34.030(6)(b) and

(c).[1] We affirm.

FACTS

Three-month-old D.D. was removed from his parents' care after he was brought to

the hospital due to breathing problems and loss of consciousness. Although D.D. was

born prematurely, previous doctors' visits had not revealed any preexisting health

problems, including eye or vision problems. Once at the hospital, D.D. did not show signs

of bruising or physical injury. But he was lethargic and not visually tracking. The soft

spot on D.D.'s head was full and bulging, when it should have been flat and soft. A

computerized tomography (CT) scan revealed a subdural hematoma—a collection of

---

[1] D.D.'s mother has signed an agreed order of dependency and is not part of this
appeal.

blood gathered between D.D.'s skull and brain. Numerous retinal hemorrhages (bleeding

in the back part of the eyeball) were found during an eye exam, along with maculoschisis

(separation of retinal layers). D.D.'s treating physicians surmised he was the victim of

abusive head trauma. A specialist confirmed this diagnosis.[2]

Based on information supplied by D.D.'s parents, the source of D.D.'s injuries

appeared to be his father, who had been watching D.D. outside the presence of D.D.'s

mother and admitted shaking D.D. to revive him. D.D.'s father also exhibited an angry

outburst at the hospital, necessitating an intervention by hospital security.

Hospital staff contacted Child Protective Services (CPS) and expressed their

concerns. The Department of Children, Youth, and Families initiated an investigation,

filed a dependency action, and placed D.D. in protective custody. D.D. spent several

months in foster care until being placed with his mother in April 2018. D.D.'s father was

the subject of a criminal investigation and was prohibited from having contact with D.D.

D.D.'s father was confrontational during the dependency process. During a May

2018 meeting, D.D.'s father called the Department's social worker a "bitch" who "needed

---

[2] "Abusive head trauma" refers to a head injury inflicted on a child or toddler by an adult. 1 Report of Proceedings (Sept. 6, 2018) at 160. It is a diagnostic term developed by the American Academy of Pediatrics to replace the term "shaken baby syndrome." *Id.* at 117.

to watch her back." 1 Report of Proceedings (Sept. 7, 2018) at 255. D.D.'s father added,

"CPS was going to go down and that everyone [needed] to watch their back." *Id.*

In September 2018, the juvenile court held a three-day fact finding hearing. The

Department presented testimony from medical treatment providers and forensic experts,

opining that D.D.'s brain injury was caused by abusive head trauma. According to the

Department's witnesses, abusive head trauma can occur without signs of external injury.

D.D.'s father presented competing testimony from three forensic experts. While

recognizing the Department's experts relied on mainstream science, including guidelines

set by the American Academy of Pediatrics, the father's experts claimed mainstream

science was flawed. According to the father's experts, D.D.'s injuries were caused by

birth-related trauma, a seizure, or a combination of both. They claimed the absence of

external injuries ruled out the possibility of abusive head trauma.

D.D.'s father also testified and disputed several of the allegations that he

mistreated D.D.'s medical providers and the social worker. D.D.'s father claimed the

Department's witnesses lied about him. He also asserted he was misunderstood due to his

Russian cultural heritage. D.D.'s father denied an anger problem or the need for services.

After hearing the case, the juvenile court commissioner took the matter under

advisement. The court then issued a letter opinion, carefully analyzing the witness

testimony. The commissioner made credibility determinations favoring the Department's

witnesses and disfavoring D.D.'s father and his experts. The court determined D.D.'s

head injury was caused by nonaccidental trauma inflicted by his father. The court also

found D.D.'s father lacked insight into the nature and seriousness of D.D.'s injuries.

Based on these findings, the court concluded D.D.'s father was "currently not capable of

caring for [D.D.] such that [D.D.] is in circumstances which constitute a danger of

substantial damage to his psychological or physical development." Clerk's Papers at 175.

D.D. was adjudicated dependent as to his father. His father now timely appeals.

## ANALYSIS

In a dependency action, the Department is required to prove a child is dependent

within the meaning of RCW 13.34.030 by a preponderance of the evidence. RCW

13.34.110(1). A dependent child is defined as one who:

> (a) Has been abandoned;
> (b) Is abused or neglected as defined in chapter 26.44 RCW by a
> person legally responsible for care of the child;
> (c) Has no parent, guardian or custodian capable of adequately
> caring for the child, such that the child is in circumstances which constitute
> a danger of substantial damage to the child's psychological or physical
> development; or
> (d) Is receiving extended foster care services, as authorized by
> RCW 74.13.03.

RCW 13.34.030(6).

4

The juvenile court found D.D. dependent pursuant to subsections (b) and (c) of the statute. In this appeal, D.D.'s father challenges the adequacy of these findings. He argues the testimony presented by his medical experts precluded the State from establishing abuse under subsection (b) and, as a result, the court had no basis for determining D.D. lacked a capable parent or guardian under subsection (c). We review the juvenile court's determination for substantial evidence. *In re Dependency of M.S.D.*, 144 Wn. App. 468, 478, 182 P.3d 978 (2008).

The substantial evidence standard requires giving significant deference to the juvenile court. We must look at the evidence "in the light most favorable to the prevailing party." *In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019). Here, that means the Department. Once the facts are viewed in this light, we ask only whether a rational fact finder "could" reach the same findings as the juvenile court according to the preponderance of the evidence standard. *Id.* We do not review "credibility determinations or weigh conflicting evidence." *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

The juvenile court's dependency determination was driven by permissible credibility determinations. Although the court could have credited the testimony of D.D.'s father and the father's experts, it was not required to do so. The Department's witnesses

provided competent evidence that D.D.'s brain injury was caused by a nonaccidental traumatic event. It was further undisputed that, prior to his hospitalization, D.D. was in the exclusive care of his parents. Around the time D.D. lost consciousness, he was alone with his father. D.D.'s father also admitted to shaking D.D. Throughout his interactions with the Department, D.D.'s father was combative and failed to express contrition or insight into his behavior. Given this combination of circumstances, the juvenile court had sufficient reasons for finding D.D. dependent as to his father based on both RCW 13.34.030(6)(b) and (c).

It bears emphasis that a finding of dependency does not mean D.D. and his father can never be reunited. Dependency proceedings are preliminary and remedial in nature. *In re Welfare of K.K.*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). They "are designed to protect children from harm, reunite families, and help parents alleviate the problems that led to intervention." *In re Dependency of A.L.F.*, 192 Wn. App. 512, 523, 371 P.3d 537 (2016). While the allegations against D.D.'s father are serious, they are not necessarily insurmountable. D.D.'s father clearly loves his family. The Department never alleged any sort of premeditated intent to harm. D.D.'s father is encouraged to engage in recommended services and work in good faith with the Department toward family reunification.

6

No. 36485-2-III
*In re Dependency of D.D.*

CONCLUSION

The order of dependency is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____ Pennell, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.

7