## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Dependency of<br><br>J.D.R., A.D.-R., and D.B.-R.,<br><br>                 Minor Children. | No. 87166-8-I (consolidated with Nos. 87167-6-I, 87168-4-I)<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND ORDER AMENDING OPINION TO CORRECT SCRIVENER'S ERROR |
|---|---|

Appellant R.R. moved to reconsider the court's opinion filed on September 29, 2025. Respondent State of Washington Department of Children, Youth, and Families filed a response. The panel has determined that the motion for reconsideration should be denied.

The court has also determined that it should amend the above entitled opinion filed on September 29, 2025 to correct a scrivener's error on page 7.

Therefore, it is

ORDERED that the motion for reconsideration is denied. And it is

ORDERED that the opinion be amended as follows:

On page 7, line 12, note number 3 shall be deleted.

The remainder of the opinion shall stay the same.

FOR THE COURT:

_Mann, J._

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| In the Matter of the Dependency of | No. 87166-8-I (consolidated with Nos. 87167-6-I, 87168-4-I) |
|---|---|
| J.D.R., A.D.-R., and D.B.-R., | |
| | UNPUBLISHED OPINION |
| Minor Children. | |

MANN, J. — R.R. appeals the finding that his three children are dependent. Substantial evidence supports that R.R. is presently unable to provide the necessary care to meet the children's needs such that they are dependent. The record also establishes the need for supervised visitation. Therefore, we affirm.

I

R.R. is the father of three children, J.D.R., A.D.-R., and D.B.-R. On September 19, 2023, a neighbor discovered the children unsupervised in their open and unsecured apartment. The children's mother was incapacitated and in and out of consciousness, with drug paraphernalia and empty alcohol bottles nearby. She admitted having used various substances. J.D.R. had noticeable injuries and D.B.-R. stated that he witnessed his mother punch J.D.R. The mother was arrested for assault and the three children were placed in protective custody. The Department of Children and Family Services

(Department) could not locate R.R. and determined that he had not been parenting the children for at least five months.

Within a few days of their removal from the mother, the Department filed dependency petitions for each child as to both parents. The court granted shelter care after the mother agreed and R.R. did not appear for the hearing. When the mother did not appear, plead, or respond to the dependency petition, the court found her in default, and granted an order of dependency for each child.[1]

A Department social worker met with R.R. in October 2023 and he expressed his desire to have the children returned to his care. R.R. lacked stable housing and reported frequent cannabis use. The social worker offered him services including substance use disorder assessment, random urinalysis testing, and neuropsychological evaluation. The social worker noted that R.R. "took a more than average time to answer questions." His mother and grandmother reported that R.R. had suffered a traumatic brain injury as a young child, which R.R. confirmed.

In February 2024, the Department filed an amended petition for dependency for each of the children as to R.R. The Department detailed the social worker's difficulties communicating with R.R. According to the social worker:

> When asked what he wants for his children, [R.R.] stated he wants his children returned to him. When asked what the [children's] needs are and how we would care for them, he only answered that he would like to work. [R.R.] has not been able to articulate the children's basic needs, nor the steps he would take to meet those basic needs. [R.R.'s] voice often trails off and his words are difficult to understand. As [the social worker] asks him questions, he becomes more difficult to understand, he loses focus, and struggles to answer basic questions.

---

[1] The mother is not a party to this appeal.

The petition identified several active safety threats as to R.R: the family situation results in no adults performing parenting and child care duties that assure the children's safety, R.R. does not have or use the resources necessary to meet the children's immediate basic needs which presents an immediate threat of serious harm, and R.R. lacks the parenting knowledge, skills, or motivation to ensure the safety of the children. The petition further stated:

> [R.R.] has not parented the children in about a year. Presently, [R.R.] has failed to articulate what is necessary to care for children ages 4, 5, and 8. [R.R.'s] struggles with mental and emotional health that appear to contribute to [his] struggles with maintaining a stable and safe environment. [R.R.] has failed to intervene to ensure the children's safety. [R.R.] has failed to protect the children from [the mother].

R.R.'s counsel raised concerns about his competency. The court appointed an investigative guardian ad litem (GAL) who recommended a litigation GAL for R.R. The GAL's report stated, "[w]hile [R.R] can present well for a short time, he cannot recall conversations or seem to track events. When he is reminded, his response is 'yes' or 'oh, yeah' but it is unclear if he actually recalls details of conversations or just wants to please people." As to any services offered by the Department, the GAL noted, "it is unclear if [R.R.] has the capacity to understand what they are, how to complete them and the consequences for his parental rights if he does not. There is a concern about his ability to track what is happening in his dependency case." The court appointed a litigation GAL as recommended.

R.R. contested the dependency. At the hearing, he testified that he and the children's mother had separated when J.D.R. was two years old, D.B.-R. was five or six years old, and A.D.-R. was four years old. R.R. cared for the children by himself for two

or three years, living in a shelter and then moving to transitional housing.  His care of the children ended when they visited their mother and she refused to return them to R.R.  R.R. stated that he loves his children and believes he is able to care for them.

The director of the children's educational facility testified about her observations of their behavior.  She recalled multiple incidents where D.B.-R. was observed trying to hit his head against the wall when upset.  He has shown a lack of self-regulation and impulse control pertaining to his ability to express and manage his emotions.  He is rarely able to engage in an activity without an adult to help guide him.  A.D.-R. struggled to interact and engage with others.  J.D.R. has issues with aggression behaviors, including hitting peers and choking teachers.  She also displayed a lack of impulse control.

The visit supervisor testified about her experiences supervising the visits between R.R. and his children.  She described challenges communicating with R.R., having to reach out to him six or seven times to set up the first visit.  R.R. rarely arrived on time to the visits.  Despite visit guidelines, he was not prepared with food or snacks for the children.  In general, R.R. interacted with the children during the visits.  The supervisor noted R.R. falling asleep two times during visits.  During one visit, R.R. left several times to buy cigarettes.

The social worker provided testimony about her difficulties communicating with R.R., both in terms of contacting him and the need for her to explain the same information multiple times.  The social worker testified that she had concerns about R.R.'s ability to retain information, particularly concerning the children's education and medical issues, because "he will be the sole provider to get them to school and to retain

-4-

all of that information, particularly with the children's IEPs and with medical documents." Additionally, the difficulties contacting R.R. raised concerns about whether schools and doctors could contact him when necessary. The social worker questioned R.R.'s ability to provide the significant supervision necessary for the children. She also noted that R.R. had been unable to protect the children from their mother. She opined that R.R. could not safely and adequately care for the three children without court intervention.

After a contested hearing, the trial court entered orders of dependency for each of the three children finding them dependent as defined by RCW 13.34.030(6)(c). The disposition ordered that the children should remain in the custody of the Department with placement in a relative's care or in licensed care if relative placement becomes unavailable. R.R. was to have twice weekly supervised visits with the children. The court ordered services for R.R. including an evaluation of his intellectual ability and adaptive functioning, random urinalysis testing, substance use disorder evaluation, and parenting services.

R.R. appeals.

II

R.R. asserts that the Department failed to present substantial evidence that he could not adequately care for his children. We disagree.

"Dependency proceedings are designed to protect children from harm, help parents alleviate the problems that led to intervention, and reunite families." In re Dependency of P.H.V.S., 186 Wn. App. 167, 181, 339 P.3d 225 (2014). A dependency hearing is " 'a preliminary, remedial, nonadversary proceeding' that does not permanently deprive a parent of any rights." In re Welfare of Key, 119 Wn.2d 600, 609,

836 P.2d 200 (1992) (quoting In re Dependency of A.W., 53 Wn. App. 22, 30, 765 P.2d 307 (1988)).

> A dependent child is any child who:
>
> (a) Has been abandoned;
> (b) Is abused or neglected as defined in RCW 26.44.020 by a person legally responsible for the care of the child; [or]
> (c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

RCW 13.34.030(6). In order to declare a child dependent, a court must find by a preponderance of the evidence that the child meets at least one of the statutory definitions of dependency. Key, 119 Wn.2d at 612. Here, the trial court found the children dependent under RCW 13.34.030(c).

We review a claim of insufficient evidence in a dependency to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support its conclusions of law. In re Dependency of C.M., 118 Wn. App. 643, 649, 78 P.3d 191 (2003). "Evidence is substantial if, when viewed in the light most favorable to the prevailing party below, a rational trier of fact could find the fact more likely than not to be true." In re Dependency of M.S.D., 144 Wn. App. 468, 478, 182 P.3d 978 (2008). We treat unchallenged findings of fact as verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). We will not weigh evidence or make credibility determinations. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

According to R.R., the evidence that he is poor, lives with a disability, and sometimes struggles to stay organized, does not demonstrate that he is a danger to his

children, especially considering that he successfully cared for the children in the past.

But the trial court found that "[c]hildren with the specific needs of [J.D.R., A.D.-R., D.B.-R.] require a parent who can respond to the children's behavior needs, manage and get the children to appointments, and follow instructions from appointments. A parent who cannot respond and manage these things poses a danger for these children's development."[2] The court also found,

> [R.R.'s] inability to remain in communication, inability to show up for visits, inability to follow directions about confirming visits and urinalysis are all indications that either due to [R.R.'s] brain injury or due to substance use or to a combination of the two, [R.R.] is not currently able to care for [J.D.R., A.D.-R., and D.B.-R.].

R.R. does not challenge these findings of fact and they are verities on appeal.[3] J.F., 109 Wn. App. at 722. These verities establish that R.R., at the time of the dependency hearing, could not meet the "unique needs" of his children and would pose a danger to their development. The court's findings support the conclusion that R.R. was not capable of adequately caring for the children such that J.D.R., A.D.-R., and D.B.-R. are dependent under RCW 13.34.030(6)(c).

III

R.R. also argues that the record does not demonstrate that unsupervised visits pose a concrete risk of harm to the children. We disagree.

"Visitation is crucial to the reunification of families." In re Dependency of Tyler L., 150 Wn. App. 800, 804, 208 P.3d 1287 (2009). As such, "[v]isitation may be limited or

---

[2] The court found that the children have "unique needs, including [J.D.R.'s] behavior of running and escaping spaces, [D.B.-R.'s] behavior of self-harm by hitting [their] head against the wall or floor, as well as indications of sexualized behaviors by [J.D.R.] and [A.D.-R.], and of the children harming others."

denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare." RCW 13.34.136(ii)(C). Additionally, "[v]isitation must occur in the least restrictive setting and be unsupervised unless the presence of threats or danger to the child requires the constant presence of an adult to ensure the safety of the child." RCW 13.34.136(ii)(C). While an express finding of harm is not required if the evidence supports the conclusion that visitation is harmful to the child, the harm must be an actual risk rather than speculation based on reports. Tyler L., 150 Wn. App. at 804. The Department has the burden to prove a concrete risk to the children, which requires more than an opinion based on a single incident. Tyler L., 150 Wn. App. at 804.

We review the trial court's visitation case disposition for abuse of discretion. Tyler L., 150 Wn. App. at 804. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Tyler L., 150 Wn. App. at 804.

The visit supervisor and social worker testified that at various times R.R. left to buy cigarettes, appeared to fall asleep during a visit, and was occasionally unable to manage the children's behavior. The social worker provided explicit testimony about her concerns about R.R.'s conduct during visitation. "I think my main concern with that is supervision. All three children are—are fairly young, particularly [J.D.R. and A.D.-R.], and require significant supervision and just awareness of surroundings in order to keep them safe."

This concern is founded given the social worker's experience with the children. She testified that during one visit, when R.R. had stepped out for a phone call, J.D.R.

ran out of the McDonald's play space and into the attached gas station convenience store. She ran around the store for several minutes before she returned to the play space. The social worker could not maintain a line of sight of J.D.R. at times during her escape. R.R. was absent, and therefore not supervising the children, during the incident.

The record supports that the ages and "unique needs" of the three children require a level of supervision that R.R. had not displayed during prior visits. Given the history and potential safety issues, the trial court did not abuse its discretion in ordering supervised visitation.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____
Chung, J.

_____, ACJ